Opinion
 

 HOPPER, J.
 

 On May 6, 1977, California Highway Patrol Officer John Davis observed petitioner’s vehicle traveling southbound on Highway 99 in Kern County. The automobile was in the fast lane and was weaving erratically in and out of the unpaved center divider. Officer Davis signaled the automobile over, and, after it stopped, asked petitioner to get out. No other passengers were in the car.
 

 Officer Davis and petitioner went to the rear of petitioner’s car where petitioner was asked for his driver’s license. Officer Davis did not request petitioner to produce his registration slip. Petitioner appeared to be intoxicated and was unable to perform field sobriety tests. Thereafter, he was placed under arrest for driving under the influence of intoxicating liquor, was handcuffed, and placed in Officer Davis’ patrol car. When asked what was to be done with his car, petitioner indicated that he wanted the car to remain where it was—on the dirt shoulder of the highway. He also indicated that he did not have anyone to pick it up.
 

 
 *365
 
 Officer Davis then called a tow truck to haul the car away, despite the fact that it was legally parked and would remain so for four hours.
 

 After calling the tow truck, Officer Davis approached petitioner’s car, turned off its engine, and began an automobile contents inventory, beginning with a search for the car registration. At no time did Officer Davis ever request petitioner to produce the registration. In checking the glove compartment, he found shotgun shells and a box of .38 caliber ammunition, but no registration slip. He then looked down and observed a black taped handle to what appeared to be a blackjack or billy club protruding out from under the front seat. After Officer Davis examined the object, pulled it out, and discovered it to be an innocuous garden tool, he looked under the seat and saw a .38 caliber revolver in a brown holster. Officer Davis seized the weapon after a check revealed it to be stolen.
 

 Officer Davis ultimately located the registration slip on the sun visor, filled out a storage report, and had the car towed away.
 

 Officer Davis testified that he searched the glove compartment only to secure the registration slip. Petitioner was ultimately charged with violations of Penal Code section 12025 (ex-felon in possession of a concealed firearm) and Vehicle Code section 23102, subdivision (a) (driving under the influence of intoxicating liquor). At the preliminary hearing petitioner moved to suppress the evidence of the gun seized from the automobile and the testimony of the officer (Pen. Code, § 1538.5). The motion was denied. That motion was renewed in the superior court along with a motion to dismiss under Penal Code section 995. At the hearing on the motions the matter was submitted on the preliminary hearing transcript. Both motions were denied. Petitioner seeks a writ of mandate ordering the superior court to suppress the evidence of the seized gun and testimony re the gun and to dismiss. We grant the writ.
 

 Since the presence of liquor is corroborating evidence, as an incident to an arrest for driving under the influence of intoxicating liquor, an officer can conduct a reasonable search in the interior of the vehicle in which the offender is apprehended for liquor containers
 
 (People
 
 v.
 
 Superior Court (Simon)
 
 (1972) 7 Cal.3d 186, 202, fn. 12 [101 Cal.Rptr. 837, 496 P.2d 1205];
 
 People
 
 v.
 
 Superior Court (Kiefer)
 
 (1970) 3 Cal.3d 807, 813, fn. 2 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559];
 
 People
 
 v.
 
 Robinson
 
 (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834];
 
 People
 
 v.
 
 Fulk
 
 (1974) 39 Cal.App.3d 851, 853-854 [114 Cal.Rptr.
 

 
 *366
 
 567]). However, the People did not seek to sustain the seizure in this case on the basis of it being incident to an arrest. We cannot, of course, nor can the People “ . . . invoke a new theory based upon the premise that the arresting officer in making the search
 
 could
 
 have acted reasonably upon a particular ground when the prosecution has failed to make a factual showing at the original hearing that the arresting officer did act upon that ground.”
 
 (Mestas
 
 v.
 
 Superior Court
 
 (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]; see also
 
 People
 
 v.
 
 Smith
 
 (1977) 67 Cal.App.3d 638, 655 [136 Cal.Rptr. 764].)
 

 The People contend that the writ should be denied because the “plain sight” rule applies. Observation by an officer from a place where he had a right to be does not violate the constitutional limits
 
 (Lorenzana
 
 v.
 
 Superior Court
 
 (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33];
 
 People
 
 v.
 
 Sirhan
 
 (1972) 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]). Consequently, if the officer had a right to be in the vehicle at the time and place where he saw the gun, he had the right and duty to investigate that weapon. The dispositive question is whether Officer Davis had the right to be where he was when he saw the weapon. The People contend that Officer Davis had the right to be in the position to have the view of the gun on several grounds.
 
 [1]
 
 We consider each of them.
 

 First, the People assert the officer had the right to enter the vehicle to shut off the engine which had been left running by the petitioner. We agree that Officer Davis had the right to enter the vehicle for that purpose. The unoccupied vehicle was standing on the dirt shoulder of a well-traveled highway with its engine running while its driver was in custody. This definitely presented a situation justifying entry into the vehicle to turn off the engine. However, there is no evidence to show that the officer had a plain view of the gun when he entered for the purpose of turning off the key—in fact, it appears that discovery was made later after the completion of the search of the glove compartment.
 

 Second, the People contend that Officer Davis entered the vehicle in preparation to removing the vehicle from the highway. However, this is a limited right under
 
 Mozzetti
 
 v.
 
 Superior Court
 
 (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], holding that routine inventories of an automobile intrude upon an area in which the private citizen has a
 
 *367
 
 “reasonable expectation of privacy”
 
 (Mozzetti,
 
 pp. 709-710). Under the
 
 Mozzetti
 
 doctrine, the officer had a right to enter the vehicle to remove those objects in plain view to a place of safety. He had no right to conduct an exploratory search under the seats.
 
 [2]
 
 Of course, while lawfully retrieving articles from inside the vehicle, the officer Jieed not blind himself to what is within his field of vision. In this case there is simply no showing
 
 that there were any articles in plain view from the outside
 
 and under
 
 Mozzetti
 
 (4 Cal.3d at p. 707) the officer could simply have rolled up the windows (if they were down) and locked the doors. There is no evidence, furthermore, that the “billy club” would have been visible to the officer in conducting a “securing” of the property prior to having the vehicle towed away. (See also
 
 People
 
 v.
 
 Miller
 
 (1972) 7 Cal.3d 219, 224 [101 Cal.Rptr. 860, 496 P.2d 1228].) We do not agree with the petitioner that the officer was required to leave the vehicle where it was simply because the petitioner requested that such be done or because it would be legally parked for four hours (Veh. Code, § 22651, subd. (f)). In light of the knowledge of the officer that he was taking the petitioner to jail, that although the petitioner had said to leave the vehicle parked, that the petitioner had also said he had no one to pick up the vehicle, and that the officer was alone, the proposed towing was not unreasonable.
 

 Lastly, the People contend Officer Davis had a right to enter the vehicle to obtain the registration certificate. We hold that an officer may enter a vehicle to check on the registration in limited circumstances. We agree with the People that “numerous California cases hold that Vehicle Code section 2805
 
 [3]
 
 authorizes an officer under reasonable circumstances to enter a vehicle for the purpose of investigating its title or registration.” The purpose of Vehicle Code section 2805 is to enforce the registration laws and to check on stolen vehicles and parts. Nevertheless, we believe that to balance such purposes and the right to privacy (see Cal. Const., art. I, § 13, and art. I, § 1), when the vehicle is occupied, the officer-must first inquire as to the location of the registration slip in the vehicle before entering to obtain it. Additionally, there is a question as to why the officer remained in the vehicle after turning ofif the engine. It appears he
 

 
 *368
 
 may have assumed that the search for the registration was just standard procedure in the stopping of a vehicle—a procedure which should be reassessed in the light of the alternative procedures, such as license checks per radio and other advanced technological developments that may be available. The cases cited by the People supporting this proposition are all distinguishable. Thus,
 
 People
 
 v.
 
 Grubb
 
 (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] was an abandoned vehicle
 
 (id.,
 
 at p. 618);
 
 Curry
 
 v.
 
 Superior Court
 
 (1970) 7 Cal.App.3d 836 [86 Cal.Rptr. 844] involved an unoccupied car
 
 (id.,
 
 at p. 844); in
 
 People
 
 v.
 
 Brown
 
 (1970) 4 Cal.App.3d 382 [84 Cal.Rptr. 390] the vehicle was unlocked, parked and had ignition keys in it
 
 (id.,
 
 at p. 385); in
 
 People
 
 v.
 
 Hunter
 
 (1969) 1 Cal.App.3d 461 [81 Cal.Rptr. 750] the vehicle was unoccupied and attention was called to it by an arrested burglar passing it in the police vehicle and stating, “ ‘That’s my car’ ”
 
 (id.,
 
 at p. 464). In
 
 Mardis
 
 v.
 
 Superior Court
 
 (1963) 218 Cal.App.2d 70 [32 Cal.Rptr. 263] the police had received a radio call regarding a possible drunk driver. The defendant was found in a parked car meeting the description. The statements made by the court in
 
 Mardis
 
 as to the right to look in the glove compartment was long before the case law on alternative methods of determining ownership and the developing law of the right to privacy and we find it not to be applicable to the case before us. (See also
 
 People
 
 v.
 
 Martin
 
 (1972) 23 Cal.App.3d 444, 447 [100 Cal.Rptr. 272] (where the driver was unable to produce a driver’s license and stated that he did not know where the registration certificate was located); and
 
 People
 
 v.
 
 Walker
 
 (1969) 273 Cal.App.2d 720 [78 Cal.Rptr. 439] (conflicting stories over location or ownership).) All of these cases involved circumstances calling for further investigation of the registration certificate, and are consistent with the rule that a warrantless search of the glove compartment is improper unless urgent circumstances present probable cause to enter
 
 (People
 
 v.
 
 Jochen
 
 (1975) 46 Cal.App.3d 243, 247 [119 Cal.Rptr. 914];
 
 People
 
 v.
 
 Superior Court (Fishback)
 
 (1969) 2 Cal.App.3d 304, 309-310 [82 Cal.Rptr. 766]). Refusal on the part of a person to present the registration certificate on request is itself a violation of the law and may give rise to probable cause to search under appropriate circumstances (Veh. Code, § 4462). However, we need not decide at this time whether such a refusal in and of itself would allow entry into the glove compartment in the light of less intrusive acts available by alternative methods of checking registration as suggested in
 
 Jochen,
 

 [4]
 

 
 *369
 
 We also note that when the officer is told of the location of the certificate, he need not allow the arrested person to personally obtain the certificate since the officer has the right to protect himself
 
 (People
 
 v.
 
 Walker
 
 (1969) 273 Cal.App.2d 720, 727 [78 Cal.Rptr. 439]). Thus, he may enter the vehicle on the basis of the owner’s implied consent.
 

 Under the law, the People have the burden of justifying the warrantless search. While such a search might very well have been upheld as incident to arrest, the evidence presented at the suppression hearing in this case offers no justification for the seizure. Since the motion under Penal Code section 1538.5 was broad enough to apply to the testimony as to observation of the gun, the motion to dismiss under Penal Code section 995 should be granted as to the felony.
 

 Let a writ of mandate issue directing the superior court to suppress the seized gun and the testimony of the officer re observing the weapon and to enter an order dismissing the felony under Penal Code section 995.
 
 [5]
 

 Brown (G. A.), P. J., and Gargano, J., concurred.
 

 [1]
 

 The record is very unclear as to the precise physical position of the officer when the gun was first observed.
 

 [2]
 

 Under
 
 People
 
 v.
 
 Norman
 
 (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237], the California Constitution, article I, section 13, imposes a higher standard than does the Fourth Amendment to the United States Constitution
 
 {id.,
 
 at p. 939). Consequently,
 
 South Dakota
 
 v.
 
 Opperman
 
 (1976) 428 U.S. 364 [49 L.Ed.2d 1000, 96 S.Ct. 3092] (which reached a conclusion contrary to
 
 Mozzetti)
 
 is not binding on us.
 

 [3]
 

 Vehicle Code section 2805 provides in part: “A member of the California Highway Patrol may inspect any vehicle of a type required to be registered under .this code on a highway ... for the purpose of... investigating the title and registration of vehicles ....”
 

 [4]
 

 Nor need we discuss the situation in which the arrested person is so intoxicated that he is unconscious, or practically so. Factually] this is not such a case, as is shown by the circumstances of appellant’s insistence about leaving the vehicle parked.
 

 [5]
 

 Of course, this opinion does not prohibit refiling and prosecution
 
 (Lorenzana
 
 v.
 
 Superior Court
 
 (1973) 9 Cal.3d 626, 640, fn. 11 [108 Cal.Rptr. 585,511 P.2d 33];
 
 People
 
 v.
 
 Smith
 
 (1977) 67 Cal.App.3d 638, 656, fn. 3 [136 Cal.Rptr. 764]). Jurisdiction over the misdemeanor charge (Veh. Code, § 23102, subd. (a)) remains in the superior court subject to transfer to the municipal court on proper motion of petitioner
 
 (People
 
 v.
 
 Clark
 
 (1971) 17 Cal.App.3d 890 [95 Cal.Rptr. 411]).