[Crim. No. 35843. Second Dist., Div. Four. June 30, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
VEODIS BURNETT, Defendant and Appellant.

**COUNSEL**

Michael S. Meza for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—The sole issue to be discussed is the legality of the detention and search which followed the stop of a vehicle on the public street for a traffic violation. We have concluded that under the circumstances shown by the record here, the detention and search were lawful, and the trial court correctly refused to suppress the evidence obtained thereby.

Following the trial court's decision denying in part the motion to suppress evidence, appellant pleaded guilty to the offense of receiving stolen property (Pen. Code, § 496), and, pursuant to Penal Code section 1538.5, subdivision (m), brought this appeal to test that ruling.

A proceeding under section 1538.5 to suppress evidence is one in which "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence...." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Viewed in conformity with these principles, the evidence established the following:

On April 13, 1978, at approximately 9:15 a.m., California Highway Patrol Officer Elam observed a brake drum fall from a Chevrolet Camaro which was being towed by a truck. The officer stopped the tow truck for the purpose of issuing a citation for violating Vehicle Code section 23114 (failing to secure a load). He requested the driver's license, the truck's registration certificate and the registration for the Camaro, which had no license plates. The driver stated that appellant, who was seated beside him, was the owner of the Camaro and had requested that it be towed to a repair shop. Appellant produced a driver's license bearing the name Veodis Felton and a California registration certificate in the name of Joseph Simmons. Due to the absence of li-

cense plates and the fact the name on the tendered registration certificate was different from that on the driver's license of the purported owner, the officer compared the vehicle identification number (VIN) located on the Camaro's dashboard with that shown on the registration. They matched. He then depressed the VIN plate for the purpose of determining if it was securely fastened. When he did so, one side of the plate fell about an inch below the dashboard. He also observed that the Camaro's dash, speedometer and some of the dash lights had been broken out, thus providing easy access to the under side of the VIN plate.

Officer Elam reached under the dash and retrieved the VIN plate, which came free in his hand. He observed that the VIN plate had been attached by a type of rivet different from the rivets used by the manufacturer. Either before or after retrieving the VIN plate Elam made a radio check to determine whether the vehicle described on the registration certificate had been reported stolen. The reply was negative. Nevertheless Officer Elam testified that when the VIN plate dropped he had "a strong suspicion" that the Camaro had been stolen.

He next made a call for Officer George, a "vehicle identification officer." This was approximately 10 minutes after the tow truck had been stopped. Officer George arrived on the scene 15 or 20 minutes later. He then arranged for the Camaro to be towed to a tow yard so that his investigation would not be conducted on a public street. Appellant went along in the tow truck.

At the inspection yard Officer George set about to find the two secret locations where identification numbers had been placed by the manufacturer. When George uncovered the first secret location he found that the numbers had been drilled out. He then found the second location and observed a different identification number. A radio check with headquarters established that the vehicle registered under that number had been stolen. At the conclusion of the the investigation at the tow yard, which took about two hours, appellant was formally arrested and transported to a Highway Patrol office.

The standards applicable to the detention of a person on a public street have been outlined in *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to sus-

pect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question. [Fn. omitted.] The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith."

We now examine the specific facts articulated by the detaining officers.

The detention here began with a lawful stop of the tow truck to issue a citation for a violation of Vehicle Code section 23114 committed in the officer's presence. Assuming that license plates were not required on the Camaro vehicle, the absence of plates did call for some inquiry, particularly after the truck driver had volunteered that their destination was a repair shop, indicating that the car was not to be junked. The fact that the purported owner was using a name different from the name on the registration was another circumstance, not necessarily evidence of crime, but a proper subject of further inquiry or investigation. The officer's next step was touching the VIN plate to see how it was attached. This was done merely by reaching into the unoccupied vehicle, hardly a serious intrusion. Officer Elam had had special training in automobile identification and he knew that this VIN plate, as installed by the manufacturer, has "some spring or give to it." The discovery that the VIN plate was not securely attached gave the investigation an entirely new aspect.

We need not rely upon the expertise of Officer Elam to draw an inference from the condition of the VIN plate in the Camaro. Even an appellate judge knows that manufacturer's identification numbers are required on automobiles (see Veh. Code, §§ 10750, 10751) for the purpose of aiding identification and deterring thefts and frauds. It would be exceedingly rare for a law-abiding citizen to have any occasion to remove the VIN plate from a motor vehicle. The discovery that this plate had been temporarily reattached to the Camaro by nonstandard rivets quite reasonably supported Officer Elam's "strong suspicion" that appellant was claiming ownership of a stolen vehicle.

According to Officer Elam's testimony the discovery of the condition of the VIN plate took place within 10 minutes of the time the vehicle had been stopped. During this time a citation had been issued by Elam's partner, and Elam had inspected the two drivers' licenses, and two registration certificates, called in for a report on one identification number, and examined the VIN plate. The trial court reasonably concluded that this was not an unreasonable procedure in view of the irregular circumstances which appeared at the time of the stop. The condition of the VIN plate made it necessary for the officers to pursue the examination of the secret identification numbers at the tow yard.

Appellant argues that Vehicle Code section 2805, cited by the trial court in support of the officers' conduct, is unconstitutional.[1]

Appellant's argument is that this section, read literally, purports to authorize a search of an occupied vehicle in violation of the applicable constitutional limitations. But *Jackson v. Superior Court* (1977) 74 Cal.App.3d 361, 367 [142 Cal.Rptr. 299], points out that section 2805, properly construed, applies to searches made under reasonable circumstances, within constitutional limitations.

*Delaware v. Prouse* (1979) 440 U.S. 648 [59 L.Ed.2d 660, 99 S.Ct. 1391], cited by appellant, does not fit the facts of this case. *Prouse* dealt with the practice of stopping a vehicle for the purposes of checking the license of the operator and the registration of the vehicle without any reason to believe that the car had been operated unlawfully or that it, or its occupants, were subject to detention, or seizure, under any applicable law. Here the initial stop was for an offense committed in the presence of the officer, and the ensuing detention and search grew out of reasonable and escalating suspicion.

Neither does *People v. McGaughran* (1979) 25 Cal.3d 577 [159 Cal. Rptr. 191, 601 P.2d 207] afford any comfort to appellant. That case

---

[1]Vehicle Code section 2805 (as it read in 1978): "(a) For the purpose of locating stolen vehicles, a member of the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway or in any public garage, repair shop, parking lot, new or used car lot, automobile dismantler's lot, vehicle shredding facility, vehicle leasing or rental lot, vehicle equipment rental yard, vehicle salvage pool, or other similar establishment, and may inspect the title or registration of vehicles, in order to establish the rightful ownership or possession of the vehicle.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) Whenever possible, inspections conducted pursuant to subdivision (a) or (b) shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations."

grew out of a lawful stop, followed by a detention not justified by anything the detaining officers knew or had reason to suspect. In the present case, "circumstances known or apparent to the officer," including "specific and articulable facts causing him to suspect...some activity relating to crime..." justified the detention and search. (See *In re Tony C.*, quoted *supra*, and *McGaughran, supra*, at p. 588.)

The judgment is affirmed.

Woods, J., and Holmes, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1980.

---

*Assigned by the Chairperson of the Judicial Council.