[No. B014052. Second Dist., Div. Five. June 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH RAY LINDSEY, Defendant and Appellant.

**COUNSEL**

Dennis A. Fischer for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Andrew D. Amerson and Robert N. Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EAGLESON, J.**—This appeal concerns the legality of a search for the vehicle identification number in a car believed by police officers to be stolen. We conclude that under the facts of this case, the search was lawful and the trial court correctly refused to suppress evidence thereby obtained.

### FACTS

Following the trial court's denial of the motion to suppress, defendant Kenneth Lindsey pleaded no contest to the felony offense of receiving stolen property, to wit, a 1977 BMW automobile. (Pen. Code, § 496.) Pursuant to Penal Code section 1538.5, subdivision (m), he brought this appeal to test that ruling.

The People's one witness at the hearing was Officer Knebel, then auto theft investigator for the Pasadena Police Department. Knebel testified that on July 21, 1982, he went armed with a warrant to defendant's home and arrested him for receiving a stolen Chevrolet automobile.[1] While there, Knebel saw a BMW parked in defendant's driveway.

As of that date, Knebel had received information from a reliable informant which led him to believe that the BMW also was a stolen car. Specifically, Knebel was advised that defendant had purchased the car from one "Shakey," known to Knebel as the leader of an auto theft ring which specialized in Cadillacs, Mercedes-Benzes and BMW's. The ring operated by stealing the vehicle identification number (VIN) from a wrecked car and placing it on a stolen car of the same make and model. They would then inform the Department of Motor Vehicles (DMV) that the car had been restored and would register it in the name of a famous person, such as Marcus Allen or Jackie Robinson. Knebel knew that, according to DMV records, the BMW was a restored wreck registered to one "Jack Anderson" at defendant's business address. He also knew that defendant had purchased other cars from "Shakey," all of which proved to be stolen.

After taking defendant into custody on the other charge, Knebel learned from defendant's wife that the BMW would be parked later that day at the bank where her daughter worked. When Knebel and his partner found the locked car outside of the bank, they looked through the window at the VIN plate on the steering column. The plate was scratched and bent in a manner inconsistent with factory installation. The rivets holding the plate were also damaged. However, neither the VIN nor the license plate number came up as stolen over the police radio.

After unsuccessfully attempting to enter the car, Knebel went into the bank and asked defendant's daughter for the keys. She relinquished them after Knebel told her that he had received her father's permission to search the car. The trial court later determined that defendant had not consented to the search.

When Knebel opened the car, he first looked on the door jamb for the federal standard sticker, and noticed that some of the digits had been "gouged out." He then looked under the hood and discovered that the secondary VIN also had been altered. Finally, Knebel discovered that the "secret" number located in the engine area was different from the number on the

---

[1]The facts herein also include testimony from the preliminary hearing, which was incorporated by reference into the record of the suppression hearing.

steering column. The secret number belonged to a car that had been reported stolen.

At the hearing, defendant argued that this information should be suppressed because Knebel lacked probable cause to make a warrantless search. The People argued that Vehicle Code section 2805 authorized Knebel to check the secondary identification numbers because he had reason to believe the car was stolen.[2]

After examining photographs of the VIN plate on the steering column, the trial court noted that something indeed appeared to be "wrong" with it. The court went on to find that Knebel's testimony was credible, and that his "strong suspicion" that the car was stolen satisfied Vehicle Code section 2805 *and* relevant case law.[3]

## DISCUSSION[4]

### I

We first address the issue of defendant's standing to seek suppression of evidence obtained from the BMW. Citing *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the People argue that defendant can only challenge a violation of his own reasonable expectation of privacy, and that no such expectation exists in a stolen car. Whatever the merits of this claim, it need not be addressed here. Under federal law, the prosecution "lose[s] its right" to raise this "factual" issue on appeal if it has failed to do so "in a timely fashion during the litigation." (*Steagald* v. *United States* (1981) 451 U.S. 204, 209 [68 L.Ed.2d 38, 44, 101 S.Ct. 1642].) Here, the

---

[2]Vehicle Code section 2805 provides: "(a) For the purpose of locating stolen vehicles, a member of the California Highway Patrol, or a member of a city police department or county sheriff's office whose primary responsibility is to conduct vehicle theft investigations, may inspect any vehicle of a type required to be registered under this code . . . on a highway or in any public garage, repair shop, *parking lot,* new or used car lot, automobile dismantler's lot, vehicle shredding facility, vehicle leasing or rental lot, vehicle equipment rental yard, vehicle salvage pool, or other similar establishment, and may inspect the title or registration of vehicles, in order to establish . . . rightful ownership or possession . . . ." (Italics added.)

[3]The court cited *Florida* v. *Meyers* (1984) 466 U.S. 380 [80 L.Ed.2d 381, 104 S.Ct. 1852] and *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157], each of which upheld a warrantless auto search predicated upon probable cause.

[4]Since Proposition 8 applies to all crimes committed on or after its effective date of June 9, 1982, it applies to defendant's crime, which occurred on July 21, 1982. As noted by the parties, federal search and seizure law therefore applies. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

People failed to raise this issue below and cannot do so for the first time in this court.

## II

■ We next consider defendant's one contention on appeal, which concerns the proper standard for gauging the reasonableness of Officer Knebel's conduct. Defendant argues that the trial court erred in requiring a showing of less than probable cause to justify a warrantless inspection under Vehicle Code section 2805. He insists that all evidence obtained from the BMW must therefore be suppressed.

We conclude that the legality of the officer's conduct can be determined without resort to Vehicle Code section 2805.[5] ■ The VIN plate in plain view, and the information obtained from the reliable informant, furnished probable cause to believe the BMW was stolen. This belief made the search for the secondary identification numbers permissible under the Fourth Amendment.

■ We begin by examining the trial court's ruling in light of the relevant standard of review. The court concluded that Officer Knebel's "strong suspicion" that the BMW was stolen satisfied United States Supreme Court cases requiring probable cause to make a warrantless auto search. We are obligated to review this issue de novo. Although the trial court's factual findings cannot be disturbed if supported by substantial evidence, we must exercise our independent judgment as to whether, on the facts found, the search was constitutionally reasonable. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].)

The recent case of *New York* v. *Class* (1986) 475 U.S. 106 [89 L.Ed.2d 81, 106 S.Ct. 960] provides the relevant guidelines. There, police officers stopped defendant's car after observing it commit two traffic violations. Defendant stepped out of the car, giving one officer a registration certificate and proof of insurance but stating that he had no driver's license. The other officer opened the door of the car to look for the VIN, which is located on the left door jamb in cars manufactured before 1969. Not finding it there,

---

[5]Vehicle Code section 2805 has been construed as authorizing warrantless searches for a car's title and registration if the inspection is "made under reasonable circumstances, within constitutional limitations." (*People* v. *Burnett* (1980) 107 Cal.App.3d 795, 800 [165 Cal.Rptr. 781], citing *Jackson* v. *Superior Court* (1977) 74 Cal.App.3d 361, 367 [142 Cal.Rptr. 299].) The validity of official conduct under the statute depends upon the unique facts of each case. (See *Jackson* v. *Superior Court, supra,* 74 Cal.App.3d at p. 368; overruled on other grounds in *People* v. *Chavers* (1983) 33 Cal.3d 462, 470 [189 Cal.Rptr. 169, 658 P.2d 96].) Since the activity involved here satisfies constitutional requirements, it also clearly passes muster under the statute.

the officer reached into the car to move some papers obscuring the area of the dashboard where the VIN is located in post-1969 models. In so doing, the officer saw part of a gun protruding from underneath the driver's seat. The officer seized the gun and arrested defendant, who later moved to suppress the gun as evidence in his prosecution for illegal possession of a weapon.

Additional relevant facts were that although the officers lawfully stopped defendant's car, they had no reason to suspect that the car was stolen, that it contained contraband, or that defendant had committed any offense other than the traffic infractions. Nonetheless, the United States Supreme Court upheld the seizure of the gun as constitutional under the Fourth Amendment.

In a two-step analysis, the court first held that defendant had "no reasonable expectation of privacy in the VIN," even though it was temporarily obscured from view. (*New York* v. *Class, supra,* 475 U.S. at p. — [89 L.Ed.2d at p. 90].) As part of the web of pervasive governmental regulation of the automobile, the VIN is required by federal law to be placed in plain view of someone standing outside of the car. Consequently, "[a] motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle, and the individual's reasonable expectation of privacy in the VIN is thereby diminished." (*Ibid.*)

The court next held, however, that an individual does have a reasonable expectation of privacy in the car's interior. The officer's act of reaching into the car to move the papers was therefore a warrantless search that required probable cause.

Three factors supplied that requirement. First, concern for officer safety at a traffic stop justified the officer reaching into the car instead of having defendant move the papers. Second, the intrusion was minimal. The officer merely checked the two locations where the VIN was required to be located: "The officer did not root about the interior . . . before proceeding to examine the VIN. He did not reach into any compartments or open any containers. He did not even intrude into the interior at all until after he had checked the door jamb for the VIN. When he did intrude, the officer simply reached directly for the unprotected space where the VIN was located to move the offending papers." (*New York* v. *Class, supra,* 475 U.S. at p. — [89 L.Ed.2d at p. 93].) Finally, the traffic violations provided probable cause to make this minimally intrusive search.

■ In light of these principles, Knebel's act of peering through the BMW windshield to see the VIN in plain view on the steering column was

constitutionally permissible. Although no traffic violation initiated this act, Knebel had a right to be where he was when it occurred. The car was located in a public parking lot and Knebel was standing outside of the car. Thus, defendant had no reasonable expectation of privacy in the information obtained during this initial inspection.

This information, plus the facts already known to Knebel, supplied the probable cause needed to search for the secondary identification numbers. As indicated by both the evidence and the trial court's findings, the VIN plate and the rivets attaching it were damaged. This fact alone would lead a reasonable person to believe that the plate might have been tampered with in an effort to disguise a stolen vehicle: "Even an appellate judge knows that manufacturer's identification numbers are required on automobiles (see Veh. Code, §§ 10750, 10751) for the purpose of aiding identification and deterring thefts and frauds. It would be exceedingly rare for a law-abiding citizen to have any occasion to remove the VIN plate from a motor vehicle. The discovery that this plate had been temporarily reattached to [the car] by nonstandard rivets quite reasonably supported [the officer's] 'strong suspicion' that [defendant] was claiming ownership of a stolen vehicle." (*People* v. *Burnett, supra,* 107 Cal.App.3d 795, 799.)

Moreover, the fact that the number on the BMW's steering column did not match that of a stolen car is consistent with the information Knebel had obtained from a reliable informant. Knebel had been informed before entering the car that defendant had purchased it from an auto theft ring that operated by placing VIN plates from wrecked cars in stolen cars. He also knew that the car was registered as a restored wreck in DMV records.

These facts led Knebel to reasonably believe that the BMW was stolen, and justified the ensuing minimal intrusion. Specifically, the search was focused on the limited objective of locating the secondary numbers, and was no more intrusive than necessary to fulfill that objective. Although acting upon what was later determined to be a misstatement of fact by Knebel, defendant's daughter voluntarily gave him the car keys.[6] Once inside, Knebel limited his search to the places on the door jamb and under the hood where the secondary numbers most likely would be located. No search was made of the car's interior or of any compartment or container therein.

In sum, the search of the BMW was constitutionally permissible and evidence thereby obtained was properly deemed admissible.

---

[6]Consent to search was not necessary here, since consent is only needed to validate a warrantless search that is otherwise impermissible under the Fourth Amendment or Vehicle Code section 2805. (See *United States* v. *Watson* (1976) 423 U.S. 411 [46 L.Ed.2d 598, 96 S.Ct. 820]; *People* v. *Grey* (1972) 23 Cal.App.3d 456, 461, fn. 4 [100 Cal.Rptr. 245].)

## DISPOSITION

The judgment of conviction is affirmed.

Feinerman, P. J., and Ashby, J., concurred.