91 Cal.Rptr.2d 152 (1999)
77 Cal.App.4th 160
In re ARTURO D., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Arturo D., Defendant and Appellant.
No. A085945.
Court of Appeal, First District, Division Four.
December 15, 1999.
Review Granted March 15, 2000.
*154 Alex Green, Oak Brook, IL, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Stan M. Helfman, Supervising Deputy Attorney General, Christopher W. Grove, Deputy Attorney General, for Plaintiff and Respondent.
*153 POCHÉ, J.
Arturo D., a minor, appeals from a judgment declaring him a ward of the court within the meaning of Welfare and Institutions Code section 602 on findings that he committed misdemeanor violations by possessing a methamphetamine pipe (Health & Saf.Code, § 11364) and by being an unlicensed driver (Veh.Code, § 12500, subd. (a)). On appeal Arturo argues that his motion to suppress should have been granted under the rule prohibiting a search incident to traffic citation as set forth in Knowles v. Iowa (1998) 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (Knowles). We reverse, but do so on the basis that the search here exceeded the scope of a search for registration documents.

FACTS
The minor's motion to suppress (Welf. & Inst.Code, § 700.1) was heard at the outset of the jurisdictional hearing held December 21, 1998. At the hearing Officer Michael Rowe of the Suisun Police Department testified that at about 11:30 p.m. on August 26, 1998, he made a traffic stop of an extended cab pickup truck traveling some 73 m.p.h. in a 50 m.p.h. zone. Defendant was driving the truck, and there were two other young men in the car, one in the passenger seat and another stretched across the horizontal pull down seat in the rear of the cab with his legs extended behind Arturo.
When asked for identification Arturo gave the officer his name, date of birth and address, but admitted he did not have a valid driver's license and that the pickup was not his. Arturo was unable to provide any documentary evidence of his identity or proof of insurance. Officer Rowe was uncertain as to whether Arturo had produced the vehicle's registration. The officer asked the occupants of the car to get out; Arturo was patted down but no identification was found on his person. The passengers were not searched. Officer Rowe then turned his attention to the pickup: he first searched the area within the driver's control which included running his hand under the driver's seat from the front. When that produced nothing the *155 officer "went in behind the bench seat" and from that vantage point the glass pipe under the seat was "easily observable." Arturo admitted the pipe and a blue box found next to it belonged to him. Officer Rowe issued Arturo a citation for speeding and for driving without a license.
Because Arturo was unlicensed the pickup was to be towed. (Veh.Code, §§ 12500, subd. (a), 14602.6, subd. (a) and 22651, subd. (p).) The boy agreed to go to the police station to facilitate contacting a friend or relative to give him a ride home. When Officer Rowe first examined the small blue box he found only an unusable amount of white powdery substance. Later at the police station the officer looked more closely at the blue box, discovered it had an internal compartment which contained a plastic bindle of a usable quantity of white powdery substance that proved upon testing to be methamphetamine. Upon discovery of the larger bindle Arturo was placed under arrest for possession.

DISCUSSION
Defendant contends the trial court erred in denying his motion to suppress. When we review a trial court's ruling on the reasonableness of a warrantless search and seizure we are bound by the factual findings of the trial court if they are supported by substantial evidence. (People v. Leyba (1981) 29 Cal.3d 591, 596-597, 174 Cal.Rptr. 867, 629 P.2d 961.) A reviewing court, however, makes an independent judgment as to whether upon those factual findings the search and seizure was a reasonable one.
On appeal Arturo concedes that the seizure of the blue box containing the methamphetamine is not at issue because the court did not sustain the possession charge, having found there was insufficient evidence the box belonged to Arturo. Instead he contends the court erred under Knowles, supra, 525 U.S. 113, 119 S.Ct. 484 in finding permissible the officer's search beneath the rear of the driver's seat.
In Knowles the defendant was stopped for speeding and issued a citation, though not arrested. (Knowles, supra, 525 U.S. at p. 114, 119 S.Ct. at p. 486.) The officer then conducted "a full search of the car, and under the driver's seat he found a bag of marijuana and a `pot pipe.'" (Ibid.) The search in Knowles was justified solely on the basis that an Iowa statute purported to accord the same authority to conduct "an otherwise lawful search" in instances where the driver was cited as when the driver was arrested. (Id. 119 S.Ct. at pp. 486-487.) The United States Supreme Court declined to bring this citation search within the search incident to arrest exception to the warrant requirement. Instead it concluded that neither of the rationales which support the arrest exceptionofficer safety and the need to preserve evidencewere the same in what it termed "search incident to citation." Arguing there was no evidence to be preserved in the context of a traffic citation, especially one for speeding, the court concluded that rationale would not support the search. (Id. at p. 488.) As for concerns for officer safety the court concluded they were greatly lessened in a routine traffic stop. Conceding that officer safety might still be at issue even in a traffic citation stop, the court found that, while officer safety "may justify the `minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search." (Ibid.)
Citing specifically to the language quoted above the trial court in this case concluded that Knowles did not preclude some minimal investigation inside the car for registration documents in an area of the vehicle "that would be closely attended to by the driver of the vehicle." The court noted that the pipe was found directly underneath the driver's seat, a location within easy reach of the driver and therefore within the permissible vicinity of the officer's search.
*156 Defendant understandably objects that it was precisely under the driver's seat in Knowles that the Iowa police found marijuana and a pot pipe after stopping Knowles for speeding. Moreover, in Knowles the proposition advanced by the state that the officer's search was justified to prevent a suspect from hiding or destroying evidence of his identity was tartly rejected by the United States Supreme Court which rejoined: "if a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him rather than merely issuing a citation." (Knowles, supra, 525 U.S. at p. 118, 119 S.Ct. at p. 488.)
In sum, then the factual distinction between this case and Knowles is that in the case before us the officer did not conduct a "full scale" search of the pickup. Neither here nor in Knowles did the drivers consent to the search. California, however, has no statute which purports to permit a full scale search of a vehicle once it has been stopped and its driver cited for a traffic violation.
Once the officer here had gotten into a position behind the bench seat he claimed the pipe was in plain view. While plain view would surely suffice had Officer Rowe remained outside the pickup and looked in (see People v. Wilborn (1999) 70 Cal. App.4th 339, 348, 82 Cal.Rptr.2d 583 [Suspect in traffic stop instructed to get out of car and once he does so rock of cocaine in baggie visible on floor of vehicle immediately below where he had been seated permitted the officer "standing in a lawful position" to seize the contraband]), it does not resolve the question of whether Officer Rowe was lawfully in a position behind the bench seat.
The question then becomes whether a routine traffic stop permits an officer who has not taken the suspect into custodial arrest[1] and has no probable cause to believe there may be contraband in the car to conduct a search of those portions of the interior of the vehicle that are likely to contain driver identification or vehicle registration documents. At the hearing on the motion to suppress the People argued the search was permissible as "a search for registration." In their view the officer lawfully was inside the vehicle in order to locate its registration or the driver's identification. They relied upon People v. Webster (1991) 54 Cal.3d 411, 430, 285 Cal.Rptr. 31, 814 P.2d 1273. In Webster a California Highway Patrol (CHP) officer stopped the defendant for speeding. When defendant was unable to produce a driver's license and the officer learned defendant was wanted on an outstanding warrant he was arrested. When the other five occupants of the car were unable to say to whom it belonged the *157 officer searched the glove compartment and the visor without success for registration documents. In the course of that search the officer saw a wallet which contained the identification of a robbery victim. (Id. at p. 429, 285 Cal.Rptr. 31, 814 P.2d 1273.) Relying upon three provisions of the Vehicle Code permitting a CHP officer to inspect documents of title or registration (Veh.Code, § 2805, subd. (a)),[2] requiring drivers to present registration documents upon demand by a peace officer (Veh.Code, § 4462, subd. (a)), and requiring them to present upon demand a valid license (Veh.Code, § 12951, subd. (b)), the court concluded that the CHP officer acted properly when he entered the car for the limited purpose of finding the registration. (People v. Webster, supra, at p. 430, 285 Cal.Rptr. 31, 814 P.2d 1273.) "Within constitutional limits, such statutes authorize an officer to enter a stopped vehicle and conduct an immediate warrantless search for the required documents." The court noted that since the occupants denied knowledge of the car's ownership the officer was entitled to look for himself and at the registration before deciding whether to impound or release it. (Id. at p. 431, 285 Cal.Rptr. 31, 814 P.2d 1273.) Finally, the court noted that the officer confined his search to "the visor and glove compartment, traditional repositories" for auto registration documents. (Ibid.; see also People v. Turner (1994) 8 Cal.4th 137, 182, 32 Cal.Rptr.2d 762, 878 P.2d 521 [Officer's passenger side entry into car which had been abandoned by suspect was permissible in order to retrieve registration from glove compartment, and did not require officer first to run an electronic license or registration check.].)[3]
Assuming that the minimal intrusion into the vehicle permitted under California authority decided pre-Knowles for registration documents survives in a routine traffic stop context, and assuming that in fact Officer Rowe was not given a copy of the vehicle's registration by Arturo, and further assuming that the spot below and to the rear of the driver's seat is a likely, if not traditional, spot to keep one's car registration, the problem with this search is that the officer testified that he first searched the area "in control of the driver, which would be in the front area." The officer made no mention of even looking in the glove compartment. It was only when Officer Rowe positioned himself behind the bench seat that the pipe was visible. Because we defer to the factual findings of the trial court we accept that the area beneath the driver's seat was one "that would be closely attended to by the driver...." But we cannot say that the scope of a search for registration or identification *158 documents in the cab of a pickup reasonably extends to virtually all areas in the physical proximity of the driver. The officer did not testify that he was concerned for his personal safety and was searching for weapons. (See People v. Hart (1999) 74 Cal.App.4th 479, 490-491, 495, 86 Cal. Rptr.2d 762 [Search of purse found inside van for identification of driver justified on basis of officer's expressed concern for his personal safety].) Nor did he testify that the area below the driver's seat could even be reached by the driver with or without the rear seat in use. Thus, the scope of the officer's intrusion went beyond that justified by the need to locate registration documents and accordingly, it was unreasonable as a search for registration documents.
Lastly the People argue that even if the search was unreasonable on the grounds it advanced at the hearing, it was less intrusive than an inventory search of the pickup would have beena search which the "law allowed" because the truck was to be towed and presumably impounded. For his part Arturo contends the People may not raise this new justification for the first time on appeal, having failed to advance it below.
In this case the prosecutor, seeking to distinguish this case from Knowles asserted: "[w]e're not claiming] that there was a search incident to an arrest. We claim that there was a search for registration. And once ... the officer was lawfully inside the vehicle and made a plain-view seizure of the pipe, which gave him probable cause to search the box next to the pipe and found the methamphetamine." She then told the court, "I'm relying on Turner, and Webster, also Jackson v. Superior Court."[4] Further discussion ensured *159 with the court questioning the officer's right to look beyond the glove box, the visor or even the pockets in the doors for the documents. The prosecutor then argued that the officer's search was justified by the need to confirm the identity of the minor and the registration of the vehicle. Then the court questioned whether such a justification "gives the officer carte blanche to just do a rip-up search of the car?" Counsel responded: "No. But I am suggesting that the officer has the right to enter the vehicle to try to locate registration and identification for an unlicensed driver, ... especially since the vehicle was going to be impounded pursuant to the Vehicle Code." This was the only reference in the course of the argument to an impound search.
Generally the prosecution is not permitted to advance on appeal a new theory to support a ruling by the trial court on a motion to suppress. (Green v. Superior Court (1985) 40 Cal.3d 126, 137, 219 Cal.Rptr. 186, 707 P.2d 248.) For example, a new theory is not permitted when it is not supported by the evidence which was adduced at the suppression hearing, and to sustain it would require that more evidence be taken. (Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 640-641, 108 Cal.Rptr. 585, 511 P.2d 33.) However, when the evidence was fully developed by both sides at the suppression hearing, the defendant had an opportunity to cross-examine regarding the facts supporting the theory, and it does not appear that any further evidence could be introduced by the defendant to support his motion that the search was unlawful, an appellate court may uphold a ruling even if its correctness depends wholly upon the newly advanced theory. (Green v. Superior Court, supra, 40 Cal.3d at pp. 136-138, 219 Cal.Rptr. 186, 707 P.2d 248; People v. Loudermilk (1987) 195 Cal.App.3d 996, 1004-1005, 241 Cal.Rptr. 208.)
In this case there was no evidence adduced to the effect the officer was searching the pickup as part of an inventory search. As is obvious from the explicit statement we quoted above, the People's responding papers and from the evidence presented by the prosecutor the rationale that the search was lawful as an inventory search was never advanced below. Nor can we say that defendant would not be prejudiced because he had no notice of such a theory. An inventory search will be reasonable if it is directed to the goal of securing the vehicle and its contents, but unreasonable when it is merely a ruse to conduct an investigatory search. (People v. Salcero (1992) 6 Cal.App.4th 720, 723, 8 Cal.Rptr.2d 578.) As a means of insuring that such searches are properly motivated they must be conducted consistent with a standardized inventory procedure. (People v. Danielson (1992) 3 Cal.4th 691, 708, 13 Cal.Rptr.2d 1, 838 P.2d 729.) Defendant did not cross-examine the police officer upon the manner in which he conducted the search and there was no evidence on the standard procedures of the Suisun Police Department for conducting such searches against which the officer's conduct could be measured. (Florida v. Wells (1990) 495 U.S. 1, 4-5, 110 S.Ct. 1632, 109 L.Ed.2d 1; South Dakota v. Opperman (1976) 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000.) We cannot say that the record before us is sufficient to support the reasonableness of the warrantless search as an inventory search, or that sustaining that newly advanced theory of its reasonableness would not prejudice defendant who lacked notice of that justification for the search.
Simply because a full search of the pickup might have been reasonable as a lawful inventory search (had such a theory been put forward below and an adequate record developed when the motion was argued) the allegedly "less intrusive" search for *160 registration documents does not get a free pass to Fourth Amendment reasonableness.

Disposition
The order denying defendant's motion to suppress is reversed and the cause is remanded to the trial court.
HANLON, P.J., and REARDON, J., concur.
NOTES
[1] In this state, like Iowa, we follow a citation procedure for minor traffic infractions. It is the rule in California that stopping and briefly detaining a motorist to conduct an investigation upon a rational suspicion that a violation of either the Vehicle Code or some other law has occurred is a detention which ripens into an arrest only "when the officer determines there is probable cause to believe that an offense has been committed and begins the process of citing the violator to appear in court" and at that point "an `arrest' takes place at least in the technical sense." (People v. Superior Court (1972) 7 Cal.3d 186, 200, 101 Cal.Rptr. 837, 496 P.2d 1205.) Should the motorist be actually taken into custody then he or she "is `under arrest' in the traditional sense of the term." (Ibid.; accord, People v. Monroe (1993) 12 Cal.App.4th 1174, 1181, 16 Cal.Rptr.2d 267.)

Here, however defendant was not even subjected to the type of arrest which results in a citation and a notice to appear (Veh.Code, § 40500, subd. (a)) until after Officer Rowe conducted the search which produced the glass pipe and the blue box. Thus, the California citation-and-release statutory scheme with its non custodial arrest seems to be analogous to that in Iowa for the purposes of the analysis used in Knowles. (Knowles, supra, 525 U.S. at pp. 113-115, 119 S.Ct. at pp. 485-486.) As described in Knowles the Iowa statute had been interpreted by its state supreme court to permit "officers to conduct a full-blown search of an automobile and driver in those cases where police elect not to make a custodial arrest and instead issue a citation." (Id. 119 S.Ct. at p. 487.)
[2] Although it was a CHP officer conducting the search in Webster, in our case the officer was a city police officer. In 1979 Vehicle Code section 2805, subdivision (a) was amended to include in addition to a member of the CHP "a member of a city police department ... whose primary responsibility is to conduct vehicle theft investigations." (Stats. 1979, ch. 252, § 1, pp. 543-544.) There is no evidence in the record before us that Officer Rowe was an officer whose primary function is to conduct vehicle theft investigations. Thus, as a statutory basis for a registration search this section would seem to be inapplicable.
[3] Despite the People's insistence that Turner is dispositive, that case was decided after an express concession by the defendant "that the warrantless search of an automobile glove compartment may be lawfully conducted based on probable cause alone... ." (People v. Turner, supra, 8 Cal.4th at p. 181, 32 Cal. Rptr.2d 762, 878 P.2d 521.) Turner did not involve a stop for a routine traffic violation. In that case the officer saw defendant and a companion behaving suspiciously by driving twice through the parking lot of a card club and then accelerating rapidly when the police cruiser slowed to look at their license plate. (Id. at p. 178, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Thus, when the officer found their car abandoned with neither passenger inside, its lights on, its motor running, and its doors unlocked, the officer was investigating more than a routine traffic violation. (Id. at p. 182, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Moreover, in that case the officer testified that he entered the car to determine if the license plates belonged on it. (Id. at p. 183, 32 Cal.Rptr.2d 762, 878 P.2d 521.) No such justification was advanced by the officer in the case before us.
[4] On appeal the People do not rely upon Jackson. In that case defendant was stopped for erratic driving and asked for his driver's license, but not his vehicle registration. (Jackson v. Superior Court (1977) 74 Cal.App.3d 361, 364, 142 Cal.Rptr. 299.) When he proved unable to pass a field sobriety test he was arrested, handcuffed and put into the patrol car. The arresting officer called for a tow truck and then went to the car first to turn off the ignition and then to conduct an inventory of the contents. (Id. at p. 365, 142 Cal.Rptr. 299.) The officer opened the glove compartment where he found shotgun shells and .38 caliber ammunition. On the floor he saw the handle of what appeared to be a clublike object projecting from under the front seat; his investigation revealed that the handle was that of a gardening tool, but he also found a .38 caliber revolver which had been stashed below the seat. The officer eventually discovered the registration in the visor and the car was towed. (Ibid.)

At issue was whether at the time the officer saw the gun he "had the right to be where he was." (Jackson v. Superior Court, supra, 74 Cal.App.3d at p. 366, 142 Cal.Rptr. 299.) The court rejected the notion that the officer's need to turn off the engine put him lawfully in a position to see the gun. (Ibid.) Under then prevailing California Supreme Court authority the court further concluded that no contraband was in plain view from the outside of the car which the officer could have merely secured for towing. (Ibid.) Lastly, the court concluded that in limited circumstances an officer may enter a vehicle to check registration, but that when the vehicle is occupied "the officer must first inquire as to the location of the registration slip in the vehicle before entering to obtain it." (Id. at p. 367, 142 Cal.Rptr. 299.) The opinion concluded that only when urgent circumstances present probable cause to enter a vehicle would a warrantless search of the glove compartment be proper. (Ibid.) However, the court noted that "refusal" to present the registration on request would provide probable cause to search in appropriate circumstances. (Id. at p. 368, 142 Cal.Rptr. 299.) Lastly, the opinion held that the officer who was told the location of the registration documents need not rely upon the driver to obtain them since to do so might imperil his safety. (Id. at p. 369, 142 Cal.Rptr. 299.) As to the gun seized from under the seat the court concluded that the suppression motion should have been granted. (Ibid.)
Officer Rowe's intrusion into the pickup fails the test set forth in Jackson. The officer may or may not have actually received the registration before he entered the pickup, and there was no testimony to the effect that the occupants told him the registration was kept under the driver's seat. In short, as the Jackson court put it, the issue comes back to whether when the officer got behind the driver's seat from which he had a plain view of the glass pipe he had a right to be in that location.
Finally, we emphasize that there was absolutely no testimony here that the officer entertained an objective or subjective fear for his personal safety. He testified that he did a pat down search of Arturo solely to locate identification. Moreover the officer did not do a pat down of either of the passengers.