[Civ. No. 60650. Second Dist., Div. Five. Feb. 25, 1982.]

LINDA GAYLE INGLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Bruce M. Margolin for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and John W. Messer, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

HASTINGS, J.—Petitioner filed this petition for writ of mandate to challenge the denial of her motion to suppress certain evidence seized in a search of her automobile. (Pen. Code, § 1538.5.) We issued an alternative writ as we believed the law in this area required clarification. Since then the United States Supreme Court has issued two decisions on the subject of automobile searches, *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] and *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841]. The latter decision provides guidance for the resolution of one of the issues raised in the present petition.

FACTS[1]

Petitioner was stopped by California Highway Patrolman Lavette, who observed her driving "well in excess of 90" miles an hour. Lavette asked petitioner for her driver's license or vehicle registration. Petitioner gave him a temporary registration slip and told him that she did not have her license with her. Lavette asked her for her name and date of birth. She gave him the name Lorenzen and a date of birth. Lavette radioed for an automated name index check for a driver's license. The information radioed back to him was that there was no match. Lavette ran the license plate registration. This produced the name Lorenzen, but the rest of the data he received did not match the information petitioner had given him. Lavette ran another check using the date of birth petitioner had given him together with the name on the car registration.

Meanwhile, a second highway patrolman, Burton, happened on the scene and stopped. He walked up to petitioner's car and looked in the window.[2] He saw several partially smoked marijuana cigarettes (roaches) in an open ashtray. Burton walked over to Lavette and told him about the roaches. Lavette entered petitioner's car and removed the ashtray and the roaches.

At about this time the results of the second automated records search were radioed back to Lavette. This search had produced the name Lin-

---

[1]We, of course, view the facts in the light most favorable to the People, the prevailing party below. (*People* v. *Superior Court* (*Keithly*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

[2]Petitioner was with Lavette at his car. There was no one else in petitioner's car.

da Gayle Ingle. Lavette asked petitioner if this was her name. She admitted that it was and said that she had lied at first because she thought she had an outstanding traffic warrant. Lavette asked her if she had any identification. She said that she did have her license, that it was in her wallet under the driver's seat of the car.

Burton, hearing this, went to the car, retrieved the wallet, brought it to Lavette, and told Lavette that he had smelled a very strong odor of unburned marijuana in the car. Lavette then entered petitioner's car to look for marijuana. Lavette had a cold which affected his sense of smell. He did not smell anything when he first entered the car. He observed a brown wicker basket on the back seat of the car. When he sniffed the basket, he detected the odor of marijuana. Inside the basket were two opaque white plastic trash bags. Lavette opened them and found marijuana remnants and seeds inside. Petitioner was arrested for possession of more than an ounce of marijuana.[3]

Lavette radioed a request for the Los Angeles County Sheriff's Department to take custody of petitioner. A Deputy Mears, of the sheriff's narcotics bureau, arrived with a partner about 20 to 30 minutes later. Lavette briefed Mears on the events leading to petitioner's arrest and also advised him that he and Burton had found $7,400 in cash, mostly $100 bills, in petitioner's wallet when they opened it to get her identification.

Mears examined the plastic bags which Lavette had found. There were markings on the bags indicating bag numbers, weights in kilos, and words which Mears recognized as referring to marijuana. Inside the plastic bags were cellophane bags containing large amounts of marijuana debris and residue. The items looked very similar to packaging that Mears personally had seen being used to smuggle marijuana in from Mexico. Mears walked over to petitioner's vehicle and smelled more marijuana. The odor seemed to be coming from the trunk of the vehicle. Mears asked petitioner's permission to search the trunk. He told petitioner that he believed there was more marijuana in the trunk and that if she did not give her permission to search, he would impound the car and attempt to get a search warrant. Petitioner told him to go ahead and search. She showed him which of her keys fit the trunk. When Mears opened the trunk he saw a large sack from which marijuana was

---

[3]Petitioner does not dispute that there was more than an ounce of marijuana in the plastic bag.

protruding. Mears exclaimed, "God, there must be 20 to 25 pounds of grass," at which point petitioner stated, "No. I know exactly how much there is. There's 15 pounds because it's mine." Mears then arrested petitioner for possession of marijuana for sale and for transportation of marijuana.

## ISSUES

Petitioner alleges that the detention for the traffic violation did not justify the search for her wallet; that the search of the contents of the wicker basket required a warrant; and that the purported consent to the search of the trunk was invalid because she was detained at the scene for an unreasonable length of time, because at the time she gave it she had been arrested illegally, and because it was coerced by Mears' intimation that the return of her money was contingent upon her consent to the search. We will deal with the officers' conduct sequentially.

## SEIZURE OF THE WALLET

Petitioner is correct in asserting that a routine arrest for a traffic violation does not justify a search for contraband. (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 815 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) But just as the temporary detention of a pedestrian to investigate suspicious circumstances may, upon appropriate police observation and inquiry, blossom into probable cause for an arrest (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *People* v. *Manis* (1969) 268 Cal.App.2d 653 [74 Cal.Rptr. 423]), so, too, may inquiries relevant to issuing a traffic citation, and observations made in the course of a temporary detention for a traffic violation, lead to probable cause for an arrest for an offense unrelated to the traffic violation.

Here, by the time Burton entered the car to get petitioner's wallet, the officers were confronted with substantially more than a routine traffic violation. First, petitioner was not merely exceeding the legal speed limit. She was driving at a rate of speed that was highly exceptional and unsafe anywhere except on a race track.[4] Second she lied about her identity, lied about not having identification, and admitted that she did

---

[4]We do not intend to imply that petitioner's excessive speed, taken alone, would have justified a search of her automobile, only that her speed, when viewed in the context of what transpired after she was stopped, made her behavior all the more suspicious.

so because of previous illegal, albeit not serious, conduct. Third, the officers knew she was currently in possession of marijuana roaches.[5]

In order to cite her both for possession of the roaches and for the traffic violation, Lavette needed to confirm petitioner's identity. Furthermore, petitioner was required to have her driver's license in her possession while operating a vehicle. (Veh. Code, § 12951.) If she did not have her license or other identification with her, Lavette would have had to take her into custody and bring her before a magistrate in connection with the speeding violation. (Veh. Code, § 40302, subd. (a).) It was thus imperative that Lavette see petitioner's driver's license.

We have found no case specifically dealing with an officer's right to enter an automobile for the purpose of getting a driver's license which a traffic arrestee has advised him is there. Apt analogies exist, however. For instance, it has been held, repeatedly, that where the circumstances call for the further investigation of vehicle ownership, a police officer may, for his own protection, enter the vehicle to obtain the registration slip rather than asking or allowing the motorist to do so. (*Jackson* v. *Superior Court* (1977) 74 Cal.App.3d 361, 367 [142 Cal.Rptr. 299]; *People* v. *Gibbs* (1971) 16 Cal.App.3d 758 [94 Cal.Rptr. 458]; *People* v. *Walker* (1969) 273 Cal.App.2d 720, 724 [78 Cal.Rptr. 439].) The United States Supreme Court has pointed out that murders of police officers frequently occur in what start out as routine traffic arrests. (*United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467].) Recognition of the dangers inherent in such detentions is the basis for the rule that police officers may routinely require motorists stopped for traffic violations to get out of their vehicles, without the officers' having to articulate specific factors which make them nervous or uneasy. (*People* v. *Nickles* (1970) 9 Cal.App.3d 986, 991 [88 Cal.Rptr. 763].) ▉ Given this state of the law, it would defy common sense not to hold that an officer, who has a right to see a motorist's driver's license, may enter a vehicle to obtain the license when the motorist, who is outside the vehicle, has told him where it is and has not otherwise objected to his entering the car without a warrant.

---

[5]The presence of the roaches in plain sight would have justified a search of the interior of the car for additional contraband. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 564 [128 Cal.Rptr. 641, 547 P.2d 417].) Since the officers did not assert this as a basis for the search which produced the wicker basket, we will discuss the validity of the search based on the facts upon which the officers did rely. (*Agar* v. *Superior Court* (1971) 21 Cal.App.3d 24 [98 Cal.Rptr. 148].)

SEARCH OF THE WICKER BASKET

It is, of course, well established that the scope of a search must be strictly tied to and jusitified by the circumstances which make .it permissible. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 19 [20 L.Ed.2d 889, 904]; *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 814 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) Thus, the officer's right to enter petitioner's car for the purpose of removing the wallet containing her driver's license, did not confer on him a right to conduct a generalized search of the interior of her automobile. It is equally well established, however, that once lawfully in a place, an officer need not blind himself to the obvious presence of contraband. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33].) What is obvious is not circumscribed by what an officer can see. In *People* v. *Guerra* (1971) 21 Cal.App.3d 534 [98 Cal.Rptr. 627], a conversation overheard from a public hallway provided probable cause for an entry into an apartment to make an arrest and prevent destruction of evidence. In this case, Burton's sense of smell led him to the wicker basket.[6]

■  Petitioner argues that having seized the basket, the officers had no right to open it absent a warrant. *Robbins* v. *California, supra,* 453 U.S. 420 [69 L.Ed.2d 744], provides the answer to that argument. When a car is searched pursuant to a belief that the car contains contraband (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; *Brinegar* v. *United States* (1949) 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302]), and not pursuant to a custodial arrest,[7] a closed container found in the car may not be opened without a warrant unless the container "so clearly announce[s] its contents, whether by its distinctive configuration, its transparency, *or otherwise,* that its contents are obvious to an observer." (453 U.S. 420 [69 L.Ed.2d at p. 752]; italics added.) Here the "or otherwise" by which the basket clearly announced its contents was its heavy and distinctive odor. No warrant was needed to search it.

---

[6]Ironically, had Lavette not had a cold, or had Burton retrieved the roaches, the presence of the additional contraband would have been discovered on the first entry into the vehicle and the issue of the recovery of the wallet would not have arisen.

[7]*New York* v. *Belton, supra,* 453 U.S. 454 [69 L.Ed.2d 768], decided along with *Robbins* deals with auto searches incident to an arrest. Since petitioner was not arrested until after the basket was searched, *Belton* is inapposite to the instant case.

## The Trunk Search

■  Petitioner was not unduly detained at the scene of her arrest before her consent to the trunk search was solicited. Each step in the investigation conducted by Lavette and Burton proceeded logically and immediately from the previous one. The initial delay beyond that normally needed to cite a speeding motorist was caused by petitioner when she falsely identified herself and withheld her driver's license. The roaches and the contraband in the wicker basket were found before the identification process was complete. The additional delay of 20 to 30 minutes during which the highway patrolmen awaited the arrival of the sheriff's deputies was not unreasonable in view of the need to transfer custody of petitioner and transferring the responsibility for completing the investigation from one law enforcement agency to another.

The seizing of the roaches and the search of the wicker bag having been legal, petitioner's arrest for possession of marijuana was also legal. Petitioner's contention that her consent to the search was the fruit of an illegal arrest therefore crumbles. Nor does the record in any way compel the inference that Mears, expressly or by inference, conditioned the return of petitioner's money on her consent to the search of the trunk.

Respondent acted well within its discretion when it denied petitioner's motion to suppress.

The alternative writ is hereby discharged. The stay order previously issued is terminated. The peremptory writ is denied.

Stephens, Acting P. J., and Ashby, J., concurred.