[No. B041853. Second Dist., Div. Four. Nov. 17, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
SHIRLEY RAE CAPPS, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Arnold T. Guminski and Rodolfo A. Aguirre, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Norman Kava and Natasha Spooner, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**GEORGE, J.**—The People appeal from the trial court's order granting defendant's pretrial motion to suppress evidence pursuant to Penal Code section 1538.5[1] and dismissing the case in furtherance of justice pursuant to section 1385. The People contend (1) they were denied their right to present all relevant evidence at the motion to suppress evidence, and (2) the seizure

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

of contraband from defendant's handbag was lawful. For the reasons that follow, we reverse the trial court's order.

### FACTS

Defendant Shirley Rae Capps was charged by information with possession of a controlled substance (cocaine) in violation of Health and Safety Code section 11350, subdivision (a). Prior to trial, defendant filed a motion pursuant to section 1538.5 to suppress "contraband seized from Ms. Capps' purse and a urine sample given to the police subsequent to the defendant's arrest." A hearing on that motion was held February 10, 1989, at which the parties stipulated the court could consider the reporter's transcript of the preliminary hearing in addition to testimony to be adduced at the hearing on the motion.

Los Angeles County Deputy Sheriff John Cater testified at the preliminary hearing that approximately 8:30 p.m. on July 18, 1988, he and his partner were conducting an investigation at Topanga Center in Topanga Canyon in connection with the arrest of a Mr. Wiley for "drinking in public." While retrieving evidence from Wiley's truck, Deputy Cater noticed defendant walking nearby. Cater asked defendant whether she knew Wiley. Defendant responded she did not and left the area.

Defendant returned a few minutes later, told Cater that Wiley had brought her to Topanga Center, and asked for the keys to the truck so she could drive home. Cater obtained Wiley's consent to this arrangement and told defendant she could have the keys if she produced a valid driver's license. Defendant stated her license was in her purse, which was in a beauty parlor located around the corner, 50 to 75 yards away. Cater told defendant he "would be more than happy to walk with her and get her her purse,"[2] and defendant replied, " 'Okay.' "

---

[2] At the preliminary hearing, Deputy Cater explained his reason for wanting to accompany defendant: "It was for my safety. If she knows this suspect who is inside my patrol vehicle, I have no idea who this woman is and I am going to walk with her to make sure she is not going around the corner to get [a] lynch mob to try to help him escape or she might retrieve a weapon and come back and try to take him. For my safety and the safety of my partner, I went with her." At the subsequent hearing on the motion to suppress, Deputy Cater testified further that defendant's conflicting statements as to whether she knew the man in custody suggested to Cater that "possibly she was conspiring to do something." Deputy Cater also testified: "Topanga Center is in the middle of Topanga Canyon. It's an extremely remote area. My partner and I were the only one[s] assigned to that area. The closest help is 20 minutes away."

As they were walking, defendant objected to Deputy Cater's presence.[3] Defendant and Cater contacted the owner of the beauty parlor, which was closed, and asked for defendant's purse. The owner, who resided at the rear of the premises, agreed to open the shop, and Cater told defendant to remain near the entrance while he accompanied the owner to the rear of the shop and picked up the purse. Cater felt the outside of the purse, to determine whether it contained any weapons, and brought it unopened to defendant. The purse was described by Cater as "an extremely large handbag" and by the magistrate as "a large bag approximately two feet wide." Defendant carried the handbag as she and Cater walked back to the patrol car.

Cater asked defendant to place the handbag on the hood of the patrol car. She was not being detained at the time, nor was she asked to open the handbag. When defendant unzipped it to locate her driver's license, Cater illuminated the interior of the handbag with his flashlight and observed "[a] clear ziploc baggie that contained a white powdery substance that resembled cocaine." Cater seized the handbag and arrested defendant. At all times prior to Cater's observation of the contraband, defendant was "free to leave."

Cater again testified at the hearing on the motion to suppress evidence and repeated much of the foregoing testimony. After Cater reiterated his reasons for accompanying defendant to the beauty parlor, the trial court stated: "We don't need to go further. If you are telling me he walked into the closed building for his safety and saw the contraband there, I am wasting time. He had no right to do that. Not close. . . . [¶]It may be wise on his part. I am not saying he is acting in bad faith for his own safety, but to find constitution[al] justification for following someone against their will back to get their purse, when they explained all the while, as indicated in the transcript, strikes me as being so clearly unconstitutional it's just fundamental. [¶]If you have something beyond that, I'll hear it, but I don't think you're close."

The prosecutor asked Deputy Cater whether there was any other reason he accompanied defendant, and Cater repeated his earlier testimony. The court then asked Cater why defendant could not have gone to the beauty parlor alone and returned with her driver's license. Cater again repeated his earlier justification of his actions, and the court ruled: "motion granted. Case dismissed." The reason for the dismissal stated in the trial court's minute order is "insufficient evidence."

---

[3] The exact nature of defendant's objection is not clear from the record but involved "basically complaints about why [the Deputy] was going with her." The record also fails to reflect whether Deputy Cater responded to the complaints voiced by defendant.

## DISCUSSION

## I

*The Contention That the Prosecution Was Denied Its Right to Present All Relevant Evidence May Not Be Raised for the First Time on Appeal*

The People contend they were denied their right to present all relevant evidence by the trial court's ruling, asserting "[i]t is *possible* that the prosecutor had additional evidence to present." (Italics added.) The record before us, however, does not reflect that the prosecutor took appropriate action in the court below to preserve this issue for appeal, for example by a request to present further evidence supported by an offer of proof.

Subject to exceptions not relevant here, reversal of a trial court's ruling due to the erroneous exclusion of evidence is possible only where "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means . . . ." (Evid. Code, § 354, subd. (a).) Failure to preserve an issue in the trial court by means of appropriate objection or request generally will preclude a party from raising that issue on appeal. (*People v. York* (1980) 108 Cal.App.3d 779, 788 [166 Cal.Rptr. 717]; *Menefee v. County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99].)

The record before us does not reveal whether the prosecutor possessed additional relevant evidence to present. Neither does the record establish whether a request by the prosecutor to present such evidence, supported by an offer of proof, would have been granted by the trial court. We note that shortly before rendering its ruling, the trial court invited the prosecutor to present further evidence, stating: "If you have something beyond that, I'll hear it . . . ." Thereafter two additional questions were put to Deputy Cater by the prosecutor and answered by the witness.

Because the People failed to take appropriate action in the trial court to preserve the issue of the purported denial of their right to present evidence, they are precluded from raising that issue for the first time on appeal. We proceed, therefore, to consider the merits of their contention that the trial court, based on the evidence before it, erred in granting defendant's motion to suppress evidence.

## II

*The Deputy's Action in Accompanying Defendant a Short Distance Over Her Objection, as She Walked to a Public Place to Retrieve Her Driver's License, Did Not Transform the Consensual Encounter Into a Detention, Since Defendant Was at All Times Free to Leave*

■ "The general rule that every presumption on appeal favors the trial court's findings of fact does not apply to rulings on questions of law. [Citations.] Because the facts bearing on the legality of the [deputy's conduct] in this case are undisputed, there is no factual issue entitled to a substantial evidence standard of review; rather, it is the ultimate responsibility of this court to measure the facts as found by the trier against constitutional standards. [Citation.]" (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].)

■ We must determine whether Deputy Cater acted reasonably in (1) predicating delivery to defendant of the keys to Wiley's truck on defendant's production of a valid driver's license, (2) insisting on accompanying defendant while she obtained her license, and (3) illuminating the interior of the handbag while defendant removed her license.

The first of these issues was considered in *People* v. *Spicer* (1984) 157 Cal.App.3d 213 [203 Cal.Rptr. 599], a case decided by Division Seven of this court. The defendant in *Spicer* was a passenger in an automobile stopped by the police. While one officer was investigating whether the driver of the automobile was under the influence of alcohol, another officer asked the defendant to produce her driver's license. The officer testified he wished to determine that the defendant had a valid license and had not been drinking, because the vehicle might be released to her upon the arrest of the driver. The officer, however, did not disclose this reason to the defendant. When the defendant opened her purse, the officer used his flashlight to illuminate the interior of the purse and observed a handgun inside. The officer seized the gun and arrested the defendant.

The Court of Appeal upheld the trial court's suppression of the handgun, ruling the defendant had been detained unlawfully. In reaching this conclusion, the court relied heavily on the fact that "the officer did not explain to [the defendant] his reason for requesting her driver's license." (*People* v. *Spicer, supra,* 157 Cal.App.3d at p. 219.) The court stated: "In the case at bench, Ms. Spicer was not given the opportunity to make a choice. Had Officer Meck informed Ms. Spicer he wanted to see her driver's license because [the driver] might be arrested and the car turned over to her, Ms. Spicer would have understood she had a choice. She could produce the

license or not depending on whether she desired to take charge of the automobile." (*Id.,* at p. 220.)

The court's opinion proceeded to describe the optimal police conduct in such situations: "Had Officer Meck *first* established [the driver] desired the car to be turned over to Ms. Spicer and Ms. Spicer was willing to take that responsibility and *then* requested Ms. Spicer's driver's license, we would have no difficulty in finding a consensual encounter. . . . [T]aking the steps in the order we have described appears to be the logical way of proceeding in this situation." (157 Cal.App.3d at p. 220, fn. 4, italics in original.)

The deputy in the present case adopted the "logical way of proceeding" suggested in *Spicer.* When defendant approached him and requested the keys to the truck, the deputy first obtained Wiley's consent to this arrangement and then informed defendant she could have the keys if she produced a valid driver's license. Defendant agreed to do so and stated her license was inside her purse which she had left in a nearby beauty parlor. To this point, therefore, all contact between defendant and Deputy Cater undoubtedly was consensual.

 Defendant argues that Deputy Cater's insistence on accompanying defendant while she retrieved her handbag transformed this consensual encounter into a detention. We disagree.

 "[T]he police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572, 108 S.Ct. 1975, 1979], quoting *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870] (opn. of Stewart, J.).) The defendant in *Michigan* v. *Chesternut, supra,* began to run when he observed an approaching patrol car. The patrol car followed the defendant around a corner "'to see where he was going,'" caught up with him, and drove alongside him "for a short distance," during which time the defendant discarded a number of packets containing illegal drugs. The Supreme Court held the defendant had not been detained: "While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." (*Id.,* at p. 575 [100 L.Ed.2d at p. 573, 108 S.Ct. at p. 1980], fn. and citation omitted; *People* v. *Warren* (1984) 152 Cal.App.3d 991, 996 [199 Cal.Rptr. 864].)

The court in *People* v. *Jones* (1979) 96 Cal.App.3d, 820, 825-826 [158 Cal.Rptr. 415], held: "Each case must be decided on its own facts but 'a detention occurs if the suspect is not free to leave at will—if he is kept in the

officer's presence by physical restraint, threat of force, or assertion of authority.' [Citation.]" Therefore, no detention occurs where an officer walks alongside a suspect and asks whether she would mind answering some questions (*People* v. *Denman* (1980) 112 Cal.App.3d 1003, 1009 [169 Cal.Rptr. 742], disapproved on another ground in *People* v. *Mayberry* (1982) 31 Cal.3d 335, 339-340 [182 Cal.Rptr. 617, 644 P.2d 810]), asks questions as the officer drives alongside a suspect walking on a sidewalk (*People* v. *Juarez* (1973) 35 Cal.App.3d 631, 634 [110 Cal.Rptr. 865]), or shines a spotlight on a suspect, then drives the patrol car directly behind him, and stops with the vehicle's headlights illuminating the suspect (*People* v. *Franklin* (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840]).

In the present case, Deputy Cater's decision to accompany defendant did not restrict her freedom of movement in any way. Defendant voluntarily went to the beauty parlor to obtain her handbag. Cater did not stop her from doing so, nor did he compel her to do so or even suggest that she do so. In accompanying defendant to the beauty parlor, Cater proceeded on a public thoroughfare to a public location, remaining in places where he had a right to be. The deputy entered the beauty parlor with the consent of the owner. Defendant was not detained and, until Cater later observed the contraband, was free to leave at any time. Only upon being arrested could defendant reasonably believe she was not free to leave.

Even were we to assume that Deputy Cater's insistence on accompanying defendant, while not amounting to a detention, infringed upon some aspect of her liberty, the deputy's legitimate concern for the safety of himself and his partner outweighed the minimal burden on defendant.

The United States Supreme Court's decision in *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330] considered whether a police officer could order a driver who had been stopped for a routine traffic infraction to step out of the vehicle. The high court observed: "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citation.] Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' [Citation.]" (*Id.,* at pp. 108-109 [54 L.Ed.2d at pp. 335-336].) The court weighed the "incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped" against the "legitimate and weighty" concern for the safety of the officer and concluded "this additional intrusion can only be described as *de minimis.*" (434 U.S. at pp. 109-111 [54 L.Ed.2d at pp. 336-337].)

The case before us presents an analogous situation. Defendant initiated the contact between herself and the deputy and freely chose to retrieve her handbag so that she could present her driver's license. In accompanying defendant to the beauty parlor, the deputy was at all times in a public place where he had a right to be. Under such circumstances, the incremental intrusion resulting from the deputy's insistence on accompanying defendant can only be described as de minimis and is outweighed by the deputy's legitimate concern for the safety of himself and his partner.[4]

 When defendant and Deputy Cater reached the beauty parlor, Cater told defendant to remain near the entrance while he retrieved her handbag, feeling the outside of the "extremely large" bag for weapons before giving it to defendant. We need not, and do not, discuss whether this brief assertion of authority was authorized, because the temporary detention of defendant at the beauty parlor and "pat-down" of the handbag did not result in the discovery or seizure of contraband or other evidence against defendant. The exclusionary rule applies where evidence "has been come at by exploitation" of an illegal search or seizure. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407].) Assuming, arguendo, defendant was unlawfully detained by being compelled to remain near the entrance of the beauty parlor, that detention ended when the deputy handed defendant her handbag and they left the beauty parlor. Even had it been unlawful for Deputy Cater to feel the outside of the handbag for weapons before handing it to defendant, Cater discovered no evidence as a result of such action.[5]

When Deputy Cater and defendant returned to the patrol car, he directed her to place her handbag on the hood of the vehicle and illuminated the

---

[4]The court in *Pennsylvania* v. *Mimms, supra,* 434 U.S. 106, 109 [54 L.Ed.2d 331, 336], held the officer's concern for his safety justified his actions despite the fact there had been "nothing unusual or suspicious" about the defendant's behavior. In the present case, defendant had acted suspiciously by initially denying and then, minutes later, admitting she knew Wiley. In addition, as Deputy Cater explained, the remote location of the encounter warranted caution on the part of the deputies.

[5]We find it unnecessary to express an opinion concerning whether it was reasonable for Deputy Cater to have defendant wait near the beauty parlor entrance while he retrieved her handbag and felt the outside of it for weapons. We note, however, a decision by this court holding that when an officer requested the registration for an automobile and the suspect stated it was in the glove compartment, "For his own protection the officer was justified in opening the glove compartment himself, rather than to risk the possibility that defendant would pull a weapon out of it." (*People* v. *Walker* (1969) 273 Cal.App.2d 720, 724 [78 Cal.Rptr. 439]; *Ingle* v. *Superior Court* (1982) 129 Cal.App.3d 188, 194 [181 Cal.Rptr. 39]; *Jackson* v. *Superior Court* (1977) 74 Cal.App.3d 361, 369 [142 Cal.Rptr. 299], disapproved on another ground in *People* v. *Chavers* (1983) 33 Cal.3d 462, 470 [189 Cal.Rptr. 169, 658 P.2d 96].) Similarly, the court in *People* v. *Wright* (1988) 206 Cal.App.3d 1107, 1112 [254 Cal.Rptr. 369], approved an officer's conduct in feeling the outside of a pair of pants before giving them to the defendant because "it was entirely reasonable for Officer Smith to assure himself that he was not handing defendant a weapon."

interior of the handbag while she located her license. In the process, Cater observed the contraband which led to defendant's arrest.

Despite the deputy's earlier patdown of the large handbag, it was reasonable for him to direct defendant to place her handbag where, as she opened it, the deputy could ensure she was obtaining her license and not a weapon. (*People* v. *Long* (1987) 189 Cal.App.3d 77, 88 [234 Cal.Rptr. 271].) When, in the process, Cater observed contraband in plain view, it was his duty to seize it. (*People* v. *White* (1970) 11 Cal.App.3d 390, 396-397 [89 Cal.Rptr. 761].) The deputy's use of his flashlight to illuminate the interior of the handbag is of no constitutional significance. (*Texas* v. *Brown* (1983) 460 U.S. 730, 740 [75 L.Ed.2d 502, 512, 103 S.Ct. 1535].)

## DISPOSITION

The trial court's order granting defendant's motion to suppress evidence and dismissing the case is reversed.[6]

McClosky, Acting P. J., and Goertzen, J., concurred.

A petition for a rehearing was denied December 13, 1990, and respondent's petition for review by the Supreme Court was denied February, 2, 1990.

---

[6]In a petition for rehearing, defendant contends that "no party proposed or briefed the issue of whether the contact between the deput[y] and [defendant] in this case constituted a consensual encounter" and concludes a rehearing is required by Government Code section 68081 because the instant opinion is " 'based upon an issue which was not proposed or briefed by any party to the proceeding . . . .' " We disagree.

The trial court granted defendant's motion to suppress all evidence "resulting from Ms. Capps' detention," finding that "following someone against their will back to get their purse . . . [is] clearly unconstitutional . . . ." On appeal, although the People failed to address the issue in their brief, it was defendant who did so by asserting that "Deputy Cater's dominion and control over [defendant] clearly amounted to a detention" because, in part, "[a] reasonable person would not believe that they were free to leave when a sheriff's deputy accompanies them to a place over their objection . . . ."

It is clear, therefore, that the question whether defendant had been detained was ruled upon by the trial court and was briefed on appeal by defendant. Our holding that the deputy's action in accompanying defendant to the beauty parlor "did not transform the consensual encounter into a detention" does not raise a different issue. Determining whether a contact between a citizen and a law enforcement officer amounted to a consensual encounter is simply one approach toward analyzing whether the interaction constituted a detention. (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)