Filed 11/14/16 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIA ELENA LOPEZ,<br><br>    Defendant and Respondent. | C078537<br><br>(Super. Ct. No. CRF143400)<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION<br>FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed October 27, 2016, in the above cause be modified as follows:

Change the second paragraph of the section of the opinion entitled, "BACKGROUND," to read:

Defendant was the driver of the car in question. Officer Moe did not notice anything erratic about how she was driving and noted no Vehicle Code violations. The officer approached defendant as she got out of her car, which caused "[s]omewhat of a panicked look" to appear on her face as she walked away from the officer. Concerned it

seemed defendant "did not want to be present for [his] investigation," and not wanting to "give her a chance to go . . . anywhere," the officer asked whether she had a driver's license. Defendant said she did not have a license, prompting the officer to ask whether she had any identification at all, to which defendant responded, "there might be identification in the vehicle." Defendant neither smelled of alcohol nor appeared to be intoxicated during the conversation. When Officer Moe attempted to place defendant in a control hold, she pulled away from him, prompting him to secure her in handcuffs while another officer looked into her car and noticed a purse on the front passenger seat. The latter officer retrieved the purse from the car and handed it to Officer Moe, who opened it in search of defendant's identification. A small amount of methamphetamine was found in a side pocket.

This modification does not change the judgment.

The petition for rehearing is denied.


_____/s/_____
HULL, Acting P. J.


_____/s/_____
DUARTE, J.


_____/s/_____
HOCH, J.

2

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | | |
|---|---|---|
| THE PEOPLE, | | |
| Plaintiff and Appellant, | | C078537 |
| v. | | (Super. Ct. No. CRF143400) |
| MARIA ELENA LOPEZ, | | |
| Defendant and Respondent. | | |

APPEAL from a judgment of the Superior Court of Yolo County, Samuel T. McAdam, Judge. Reversed.

Kamala D. Harris, Attorney General, Gerald A. Engler, Michael P. Farrell, Assistant Attorneys General, Catherine Chatman, Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Appellant.

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Respondent.

1

The People appeal from the trial court's orders granting defendant Maria Elena Lopez's pretrial motion to suppress evidence under Penal Code[1] section 1538.5 and dismissing the case in furtherance of justice under section 1385. The suppression issue involves the following basic facts: defendant was outside her car when a police officer, who watched her park the car, asked whether she had a driver's license; when defendant said she did not, the officer asked whether she had any identification and defendant said she thought it was in the car; the officer then placed her in handcuffs and another officer retrieved a purse from the car; the subsequent search of the purse for identification uncovered a small amount of methamphetamine.

The Attorney General contends the methamphetamine was found during a lawful search for identification under *In re Arturo D.* (2002) 27 Cal.4th 60 (*Arturo D.*) and the trial court erroneously ruled the United States Supreme Court's decision in *Arizona v. Gant* (2009) 556 U.S. 332 [173 L.Ed.2d 485] (*Gant*) compelled suppression of the evidence. Defendant asserts the officer unlawfully detained her when he approached and asked whether she had a driver's license, *Arturo D.* is no longer good law following *Gant*, and, even if *Arturo D.* remains good law, the search of her purse for identification was nevertheless unlawful on these facts. We agree with the Attorney General's assessment of the issue and reverse the trial court's orders granting the suppression motion and dismissing the case against defendant.

## BACKGROUND

On the morning of July 4, 2014, Officer Jeff Moe of the Woodland Police Department was in his patrol car when he received a dispatch regarding a report of a particular car "driving erratically" at a certain intersection not far from his location.

---

[1] Undesignated statutory references are to the Penal Code.

The officer drove to that intersection, but did not locate the car. He then had dispatch run the license plate number provided during the initial report and drove to the address associated with that license plate number, which was one block away. The car was not there either, prompting the officer to resume his normal patrol duties. Later in the day, the officer received another dispatch regarding the same car. This dispatch advised that a person identified as "Marlena" was driving at a different intersection, not far from where the first report of erratic driving was claimed to have occurred, and that "Marlena had been drinking all day." The officer again responded to the intersection identified in the report. Again unable to locate the car, the officer returned to the address associated with the car's license plate number, and parked nearby. A few minutes later, the car the officer was looking for pulled up and parked on the street in front of that address.

Defendant was the driver of the car in question. Officer Moe did not notice anything erratic about how she was driving and noted no Vehicle Code violations. The officer approached defendant as she got out of her car, which caused "[s]omewhat of a panicked look" to appear on her face as she walked away from the officer. Concerned it seemed defendant "did not want to be present for [his] investigation," and not wanting to "give her a chance to go . . . anywhere," the officer asked whether she had a driver's license. Defendant said she did not have a license, prompting the officer to ask whether she had any identification at all, to which defendant responded, "there might be identification in the vehicle." Defendant neither smelled of alcohol nor appeared to be intoxicated during the conversation. Officer Moe secured defendant in handcuffs as another officer looked into her car and noticed a purse on the front passenger seat. The latter officer retrieved the purse from the car and handed it to Officer Moe, who opened it

in search of defendant's identification. A small amount of methamphetamine was found in a side pocket.

Defendant moved to suppress the evidence of the methamphetamine found in the purse. During the hearing on the suppression motion, Officer Moe testified to the foregoing facts. In opposition to the motion, the prosecutor argued the officer was justified in detaining defendant to investigate whether she was driving under the influence based on the report of her driving erratically that morning, the more recent report of her driving after drinking all day, and the fact defendant appeared "nervous and panicked" when she saw him. Because defendant did not provide the officer with identification, the prosecutor argued, "[c]ase law says that the officer could enter the vehicle to retrieve a purse to search for identification," which the officer was doing when he found the methamphetamine.

In response, defense counsel argued Officer Moe, having witnessed no violations of the law, detained defendant without any "articulable suspicion whatsoever" because the reports he was investigating proved to be unreliable when defendant parked the car without incident, was not "falling all over[]" herself when she got out of the car, and did not smell of alcohol. According to defense counsel, defendant's "no" in response to the officer's question regarding whether she had a driver's license and her attempt to walk away amounted to her declining to participate in a consensual interaction with the officer, which resulted in her unjustified detention. The trial court then asked defense counsel to assume the detention was lawful and address the subsequent car search. In that regard, counsel argued the United States Supreme Court's decision in *Gant*, *supra*, 556 U.S. 332, required suppression of the methamphetamine evidence because it was not reasonable for the officer to believe evidence relevant to the crime of arrest, i.e., driving without a license, would be found in the car.

With respect to the *Gant* decision, the prosecutor responded by arguing that case was distinguishable because defendant was not under arrest, but rather "merely being detained," and therefore, Officer Moe was "not necessarily looking for evidence of a crime," but simply for defendant's identification, which California case law allows.

The trial court took the matter under submission and thereafter issued a written order granting the suppression motion. The trial court found the initial interaction between Officer Moe and defendant did not amount to a detention, but was instead a consensual encounter during which the officer asked defendant whether she had a driver's license. Defendant's response that she did not have a license provided the officer with probable cause to arrest her for driving without a license. However, the officer did not have probable cause to arrest defendant for driving under the influence of alcohol or drugs. Thus, the trial court reasoned, under *Gant*, *supra*, 556 U.S. 332, the search of defendant's car was justified only if she was "within reaching distance of the vehicle," which she was not, or if it was "reasonable to believe the vehicle contain[ed] evidence of criminality related to [her] arrest" for driving without a license. "But the court in *Gant*, on facts similar, concluded that when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. . . . [¶] . . . The Court reasoned that allowing law enforcement to search a vehicle for a driver's license, registration or insurance after an arrest for a traffic violation would effectively totally undercut its declaration that the search incident to arrest exception to the Fourth Amendment warrant requirement should be narrowly tailored." Explaining it was "compelled to follow *Gant*," the trial court granted the suppression motion. The trial court thereafter dismissed the case against defendant in furtherance of justice under section 1385. This appeal followed.

DISCUSSION

"Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards. [Citations.] A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant. [Citations.]" (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.) "The burden is on the People to justify the warrantless search as reasonable." (*Id*. at p. 919.) "In reviewing a suppression ruling, 'we defer to the [trial] court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]' [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 563.)

In *Arturo D.*, *supra*, 27 Cal.4th 60, our Supreme Court confirmed the existence of a narrow exception to the warrant requirement in "the context of a valid traffic stop during which a driver fails to produce [an] automobile registration, driver's license, or identification documentation upon an officer's proper demand" (*id*. at p. 68), allowing a "limited warrantless search[] of areas within [the] vehicle where such documentation reasonably may be expected to be found." (*Id*. at p. 65.) The court first explained: "Vehicle Code sections 4462 and 12951 long have required that the person in the immediate control of an automobile present evidence of registration and a driver's license upon proper command of a peace officer. . . . The reason for these provisions is plain: An officer who has stopped a vehicle for a traffic infraction and who plans to issue a citation needs to ascertain the true identity of the driver and the owner of the vehicle, in order to include that information on the citation and the written promise to appear." (*Id*. at p. 67, fn. omitted.) The court then explained it had previously upheld the reasonableness of a warrantless search for a vehicle's registration in *People v. Webster*

6

(1991) 54 Cal.3d 411 (*Webster*), where the vehicle searched was lawfully stopped for speeding, the driver failed to produce a driver's license when requested, neither the driver nor his five passengers claimed ownership of the vehicle, and the officer " 'confin[ed] his search to the visor and glove compartment, traditional repositories of auto registrations.' [Citation.]" (*Arturo D.*, *supra*, 27 Cal.4th at pp. 68-70, italics omitted.) The court also noted a multitude of California cases, decided both before and after *Webster*, similarly concluded a limited search for "registration and other related identifying documentation" did not violate the Fourth Amendment. (*Id*. at p. 71 & fn. 7.)

After noting the foregoing state of the law in California, our Supreme Court explained the United States Supreme Court's decision in *New York v. Class* (1986) 475 U.S. 106 [89 L.Ed.2d 81] (*Class*) provided some support for upholding such limited documentation searches. In *Class*, the high court upheld a warrantless search for a stopped car's vehicle identification number (VIN), during which the searching officer saw a gun in plain view. "[U]pholding the [VIN] search under a balancing test that considered ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion" ' [citation], the majority [in *Class*] emphasized, among other things, (i) the importance of the VIN system in tracking stolen vehicles and in promoting highway safety [citation], (ii) the generally decreased expectation of privacy that drivers have with regard to automobiles, the VIN in particular, and the pervasive regulatory scheme that surrounds the use of vehicles on public roads [citation], (iii) officer safety concerns [citation], and (iv) the limited nature of the search undertaken. In the latter respect, the majority observed that the officer did not 'root about the interior' of the car or 'reach into any compartments,' but that the search was instead 'focused in its objective, and no more intrusive than necessary to fulfill that objective.' [Citation.]"

(*Arturo D.*, *supra*, 27 Cal.4th at p. 72, fns. omitted.)  Our Supreme Court concluded such an analysis and conclusion was "not inconsistent with a similar analysis and conclusion in the context of *Webster*-type searches" and added:  "Indeed, in at least one important respect, *Webster*-type searches may be more justifiable under the Fourth Amendment, in that the basis for a search for identification and registration documentation preparatory to the issuance of a citation would appear to be more compelling than the justification for a search to discover the VIN of a vehicle for which the driver already had produced apparently valid registration documentation." (*Id*. at p. 73.)

Finally, our Supreme Court distinguished *Knowles v. Iowa* (1998) 525 U.S. 113 [142 L.Ed.2d 492], relied upon by the defendants in *Arturo D*., in which the high court "held that the Fourth Amendment prohibits a *full-scale* warrantless search of an automobile incident to the issuance of a traffic citation." (*Arturo D.*, *supra*, 27 Cal.4th at p. 74.)  In *Knowles*, the driver was stopped for speeding and issued a citation prior to a full warrantless search of the car for contraband, during which marijuana was found under the driver's seat.  "The high court held that the twin rationales supporting the search incident to custodial arrest exception to the warrant requirement—officer safety and the need to preserve evidence for later use at trial—were not present on the facts of *Knowles*," explaining:  " 'Once [the driver] was stopped for speeding *and issued a citation*, all the evidence necessary to prosecute that offense had been obtained.' " (*Arturo D*. at pp. 74-75.)  Rejecting the State's argument that the full search was nevertheless justified " 'because a suspect who is subject to a routine traffic stop may attempt to hide or destroy evidence related to his [or her] identity (e.g., a driver's license or vehicle registration),' " the high court stated, " 'if a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him [or her]

8

rather than merely issuing a citation' " (*id*. at p. 75), at which point a full search of the passenger compartment would have been authorized by *New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768] (*Belton*).[2] Distinguishing the full-scale search invalidated in *Knowles* from the situation in which an officer conducts a more limited *Webster*-type search, our Supreme Court stated: "Absent contrary direction from the high court, at this juncture we agree with the Attorney General that the court in *Knowles* addressed itself only to the question of allowing a full-scale warrantless search for contraband *following* the issuance of a traffic citation, and that the court did not address (nor do we read its opinion to cast doubt upon) the longstanding authority, established under California law as well as federal and sister state decisions, permitting a police officer to conduct under certain circumstances a limited warrantless search of a vehicle for required regulatory documentation, *prior* to issuing a traffic citation." (*Arturo D., supra,* at pp. 75-76, fns. omitted.)

*Ingle v. Superior Court* (1982) 129 Cal.App.3d 188 (*Ingle*) is a pre-*Webster* case upholding a search for a driver's license with facts similar to those of this case. There, the defendant gave the officer who stopped her for speeding a temporary registration slip, told the officer she did not have her driver's license with her, and lied about her identity. When a records search revealed her actual identity, the defendant admitted she lied and said she did have her license in her wallet under the driver's seat of the car. (*Id*. at pp. 191-192.) Another officer, who also arrived at the scene of the traffic stop, retrieved the

---

[2] As we explain in greater detail later in this opinion, in *Gant*, *supra*, 556 U.S. 332, "the high court limited *Belton, supra,* 453 U.S. 454 . . . by holding that police may not search containers in a vehicle's passenger compartment 'incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle,' unless 'it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.' " (*People v. Diaz* (2011) 51 Cal.4th 84, 96, fn. 9.)

9

wallet and noticed the "strong odor of unburned marijuana" inside the car (the first officer had a cold and did not initially smell the marijuana) that led to a search of the car for marijuana and the discovery of more than an ounce of the prohibited substance. (*Id.* at p. 192.)

Upholding the validity of the search for the wallet, the retrieval of which supplied probable cause to conduct the search for marijuana (due to the second officer's more acute sense of smell), the Court of Appeal explained the defendant "was required to have her driver's license in her possession while operating a vehicle" and "[i]f she did not have her license *or other identification* with her, [the officer] would have had to take her into custody and bring her before a magistrate in connection with the speeding violation." (*Ingle*, *supra*, 129 Cal.App.3d at p. 194, italics added.) The court then explained: "We have found no case specifically dealing with an officer's right to enter an automobile for the purpose of getting a driver's license which a traffic arrestee has advised him [or her] is there. Apt analogies exist, however. For instance, it has been held, repeatedly, that where the circumstances call for the further investigation of vehicle ownership, a police officer may, for his [or her] own protection, enter the vehicle to obtain the registration slip rather than asking or allowing the motorist to do so. [Citations.] The United States Supreme Court has pointed out that murders of police officers frequently occur in what start out as routine traffic arrests. [Citation.] Recognition of the dangers inherent in such detentions is the basis for the rule that police officers may routinely require motorists stopped for traffic violations to get out of their vehicles, without the officers' having to articulate specific factors which make them nervous or uneasy. [Citation.] Given this state of the law, *it would defy common sense not to hold that an officer, who has a right to see a motorist's driver's license, may enter a vehicle to obtain the license when the motorist, who is outside the vehicle, has told him* [*or her*] *where it is and has not*

10

*otherwise objected to his [or her] entering the car without a warrant.*" (*Ibid*., italics added.)

If the foregoing case law is still good law, as the Attorney General argues, the search in this case was reasonable under the Fourth Amendment. As a preliminary matter, we agree with the trial court's assessment that defendant was not detained when Officer Moe approached her in broad daylight as she got out of her car and asked whether she had a driver's license. Relying primarily on *People v. Garry* (2007) 156 Cal.App.4th 1100, defendant argues the trial court erred in so concluding. We disagree. Unlike *Garry*, where the detaining officer, who was patrolling a high-crime area at night, stopped his patrol car about 35 feet from the defendant, illuminated the defendant with the patrol car's spotlight, got out of the car, and then briskly approached the illuminated defendant while armed and wearing a full police uniform (*id*. at pp. 1103-1104), here, considering all of the circumstances surrounding Officer Moe's approach and the words he directed towards defendant, we cannot conclude his verbal and non-verbal conduct "constituted a show of authority so intimidating as to communicate to any reasonable person he or she was ' "not free to decline [his] requests or otherwise terminate the encounter." ' [Citation.]" (*Id*. at p. 1112.) Nor are we persuaded by defendant's argument the officer's testimony that he "didn't give her a chance to go . . . anywhere" before asking whether she had a driver's license "implies that he actually blocked [her] path to prevent her from getting away" rather than simply asking the question before she was able to walk away from him. As defendant herself acknowledges, asking for identification does not turn a consensual encounter into a detention. (See *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1254.)

However, defendant's answer to Officer Moe's question, i.e., she did not have a driver's license, did supply an appropriate justification for the detention that occurred

11

immediately thereafter. This is because the officer, who witnessed defendant driving her car, now had her admission she did so without a license. (See Veh. Code, § 12500, subd. (a).) Moreover, defendant's additional statement she believed she had other identification in the car makes this case factually similar to *Ingle*, *supra*, 129 Cal.App.3d 188 in which the Court of Appeal held "that an officer, who has a right to see a motorist's driver's license, may enter a vehicle to obtain the license when the motorist, who is outside the vehicle, has told him [or her] where it is and has not otherwise objected to his [or her] entering the car without a warrant." (*Id*. at p. 194.) While this case involves a search for other identification defendant said might be in the car, rather than a driver's license, the *Webster*-type search approved in *Arturo D.*, *supra*, 27 Cal.4th 60 includes as proper aims of such a search not only the driver's license and vehicle registration, but also other "identification documentation." (*Id*. at p. 68.) This is because "[a]n officer . . . who plans to issue a citation needs to ascertain the true identity of the driver and the owner of the vehicle, in order to include that information on the citation and the written promise to appear." (*Id*. at p. 67.) Nor does the fact that Officer Moe searched defendant's purse for such documentation take this search outside the scope of that authorized by *Arturo D.* that includes "areas within a vehicle where such documentation reasonably may be expected to be found." (*Id*. at p. 65.) As Justice Werdegar noted in her concurring and dissenting opinion in *Arturo D.*, "[t]he most 'traditional repository' of a driver's license [or other form of identification] is an individual's wallet, usually worn on his person if a man, or carried in her purse if a woman." (*Id*. at p. 90 (conc. & dis. opn. of Werdegar, J.).)[3]

---

[3] While Justice Werdegar argued allowing such a search for identification inside a woman's purse "is not the law," (*Arturo D.*, *supra*, at p. 90 (conc. & dis. opn. of Werdegar, J.), her statement as to the reach of the majority holding was disputed nowhere

12

The foregoing analysis disposes of defendant's claims the initial encounter between she and Officer Moe amounted to an unlawful detention and the subsequent search of her purse was not justified under *Arturo D., supra,* 27 Cal.4th 60. We turn now to defendant's assertion *Arturo D.* is no longer good law following *Gant*, *supra*, 556 U.S. 332, which we also reject. As previously noted, in *Belton*, *supra*, 453 U.S. 454, the United States Supreme Court "held that when an officer lawfully arrests 'the occupant of an automobile, he [or she] may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile' and any containers therein." (*Gant*, *supra*, at pp. 340-341, quoting *Belton*, *supra*, 453 U.S. at p. 460.) This holding extended *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685], in which the high court previously "held that a search incident to arrest may only include 'the arrestee's person and the area "within his [or her] immediate control" . . . .' " (*Gant*, *supra*, at p. 339), to the automobile context and concluded the entire passenger compartment was searchable incident to arrest "based in large part on [the court's] assumption 'that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach." ' [Citation.]" (*Id.* at p. 341.)

In *Gant*, *supra*, 556 U.S. 332, the high court held that "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle" (*id.* at p. 335), explaining: "It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that

in the majority opinion. We agree such a search is covered by the *Arturo D.* holding. (See also *People v. Capps* (1989) 215 Cal.App.3d 1112, 1122-1123 [officer's act of illuminating the inside of the defendant's handbag with his flashlight while she retrieved her driver's license, during which he saw cocaine in plain view, was reasonable].)

13

gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." (*Id*. at p. 345.) However, the court also held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " (*Id*. at p. 343, quoting *Thornton v. United States* (2004) 541 U.S. 615, 632 [158 L.Ed.2d 905] (conc. opn. of Scalia, J.).) The court continued: "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations.] But in others, including *Belton* and *Thornton,* [where the defendants were arrested for drug possession], the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." (*Gant*, *supra*, at pp. 343-344.)

Here, like *Gant*, at the time of the challenged search, Officer Moe had no reasonable basis to believe defendant's car contained evidence relevant to the crime of arrest. However, as we have explained, the officer did not conduct a full *Belton*-type search of the passenger compartment of defendant's car incident to her arrest. He did not search the entire passenger compartment, including all containers, rummaging at will through her personal belongings in search of incriminating evidence. Instead, he conducted a more limited *Webster*-type search for identification in one specific location, i.e., defendant's purse, a traditional repository for identification documentation. *Gant* does not speak to the propriety of such a search. Indeed, the *Gant* court

14

acknowledged the existence of "[o]ther established exceptions" to the warrant requirement and cited *Class*, *supra*, 475 U.S. 106, with approval. (*Gant*, *supra*, at pp. 345-346.) As we have also explained, in *Arturo D.*, our Supreme Court relied on the analysis and conclusion in *Class, supra,* 475 U.S. 106, upholding the reasonableness of a VIN search, as supportive of the *Webster*-type search that has long been considered reasonable in California. (*Arturo D.*, *supra*, 27 Cal.4th at pp. 71-74.)

Finally, we also reject defendant's argument that because she was already arrested for driving without a license at the time the search occurred, the search was necessarily done incident to that arrest and, therefore, the requirements of *Gant, supra,* 556 U.S. 332 must be satisfied. She was certainly secured in handcuffs, one of the "trappings of a technical formal arrest." (*Dunaway v. New York* (1979) 442 U.S. 200, 215 [60 L.Ed.2d 824].) However, nothing prevented Officer Moe from issuing defendant a citation for driving without a license, assuming he found identification in her purse that satisfied him as to her identity, and then releasing her from the handcuffs and allowing her to go about her day. Instead, the officer found methamphetamine in the purse and formally arrested her for possession of the drug and driving without a license. But the fact defendant was in handcuffs when the *Webster*-type search occurred does not, in our view, transform the limited search for identification into a full search of the passenger compartment incident to arrest.

For the foregoing reasons, we must reverse the trial court's orders granting defendant's motion to suppress the evidence found in her purse and dismissing the case against her.

15

## DISPOSITION

The trial court's orders granting defendant's motion to suppress evidence and dismissing the case are reversed and the matter is remanded to that court for further proceedings.

          /s/

HOCH, J.

We concur:

          /s/

HULL, Acting P. J.

          /s/

DUARTE, J.