[No. E004722. Fourth Dist., Div. Two. Dec. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ARTHUR WRIGHT, Defendant and Appellant.

COUNSEL

Alister McAlister, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THE COURT.*— In this appeal we are asked to decide the novel and interesting question of whether a police officer may conduct a patdown search of a suspect's clothing which is not being worn by the suspect. Under the facts of this case we conclude that the search was proper. As defendant's motion to suppress was also correctly denied on the other grounds raised, we will affirm the judgment.

After the trial court denied his motion to suppress under Penal Code section 1538.5, defendant entered a plea of guilty to the charge of possessing a controlled substance. (Health & Saf. Code, § 11377, subd. (a).) The allegation that he had served a prior prison term within the meaning of Penal Code section 667.5 was stricken and the court sentenced defendant to the middle term of two years. His appeal challenges only the denial of his motion to suppress. (Pen. Code, § 1237.5; Cal. Rules of Court, rule 31 (d).)

At the hearing on the motion to suppress, the trial court had before it the transcript from defendant's preliminary hearing, which contained the testimony of Officer Larry Smith of the Fontana Police Department and of defendant Richard Arthur Wright, who testified on his own behalf. Officer Smith also provided additional testimony at the hearing on the motion.

Officer Smith testified that, while on duty on April 15, 1987, he observed what appeared to be a juvenile female standing in front of a motel. She wore what he described as provocative attire, and as the area was known to him as one with a high instance of prostitution, he approached her to investigate. She informed him that she had run away from a facility in Riverside County, and that she had left clothing in room 116 of an adjacent motel.

---

*Before Campbell, P. J., Hews, J., and Victor, J.†

---

†Assigned by the Chairperson of the Judicial Council.

When Officer Smith went to this room, his knock was answered by a woman, Tina Veach, who acknowledged that the girl had left belongings in the room. Three other persons, including two men, were present in the room; one of them, named Reed, was familiar to the officer as having a history of carrying concealed weapons.

Before entering the room, Officer Smith observed a hypodermic syringe containing a reddish solution on a small dresser between two beds. After Tina Veach invited him into the room, he requested a backup and waited until the second officer arrived before continuing his investigation.

Officer Smith then collected the hypodermic syringe. While doing so, he saw a package of vitamin B, which he recognized as a substance often used to "cut" drugs. He asked who had rented the room, and defendant replied that it was his room. The officer asked defendant to come with him into the bathroom so that he could continue his investigation without the other persons hearing what was being said. As defendant, who had been in bed, was unclothed, he asked the officer to hand him his pants. Officer Smith complied, but as he handled the pants he felt a hard object in a pocket. As he was concerned for his safety, given the past history of Reed, and as he believed that the hard object was a knife, he reached in to retrieve it. As he removed the knife, 10 clear baggies fell out. They contained methamphetamines.

Subsequently, Wright orally consented to a full search of the motel room and also signed a written consent prepared by Officer Smith. Pursuant to this consent, a search was conducted during which a hypodermic needle was found under the mattress of the bed on which defendant had been lying.

Defendant's version of the incident was substantially different. He testified that the officer began an extensive search of the room and his clothing before any conversation occurred between them, and that he only asked defendant to come chat with him after the baggies had been found in the pants. He denied giving consent to any search and testified that he signed, at Officer Smith's request, a piece of paper on which he could not see any writing. However, the trial court implicitly accepted the officer's testimony in all significant respects. ■ In reviewing the ruling on the motion to suppress, this court must uphold the findings of the trial court, whether express or implied, so long as they are supported by substantial evidence. (*People* v. *Rios* (1978) 16 Cal.3d 351, 357 [128 Cal.Rptr. 5, 546 P.2d 293]; *People* v. *Payne* (1977) 65 Cal.App.3d 679, 681 [135 Cal.Rptr. 480].) As there is ample evidence in the record to support the trial court's acceptance of the sequence of events as given by Officer Smith, our consideration of the issues proceeds from that point.

## DISCUSSION

### A.

██ First, defendant argues that the officer was not justified in detaining him for questioning—i.e., in asking him to step into the bathroom. He asserts that the mere presence of the syringe on the table next to his bed did not constitute probable cause to question him.

By the time Officer Smith decided to question defendant, he had seen not only the syringe containing a fluid which he believed might be a narcotic, but also the container of vitamin B. While, as defendant argued below, a syringe may be used for legitimate medical purposes, the vitamin B reasonably supported the suspicion that the syringe contained illicit drugs. ██
██ The quantum of suspicion which will justify a limited detention is far lower than that which is required to justify an arrest (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]), and the officer's observations, added to his experience with narcotic offenses, constituted "specific and articulable facts" underlying his suspicion that defendant was involved in criminal activity. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]; *People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].) As defendant had stated that he had rented the room, the trial court correctly found that there was probable cause to detain him for questioning.

### B.

██ Having reached this point, we turn to the search of the pants.

First, defendant erroneously claims that there was no evidence that Officer Smith believed that the hard object was in fact a knife. After the trial court pointed out this omission before the hearing in superior court, the People elicited testimony from Officer Smith in which he expressly stated that, on feeling a hard object in the pocket, he "felt like it was a knife." While it is true that objects not reasonably believed to be weapons may not usually be removed during a patdown search (*People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659]), the principle is inapposite here.

Next, it is correctly argued that a patdown search must be justified by the officer's reasonable concern for his safety. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 27 [20 L.Ed.2d at p. 909].) There must be specific facts leading the officer to believe that the suspect may be armed; for example, it may not be assumed that all persons suspected of narcotics trafficking will be armed and dangerous. (*Santos* v. *Superior Court* (1984) 154 Cal.App.3d 1178, 1185 [202 Cal.Rptr. 6].) However, Officer Smith testified that defendant's companion, Reed, had a history of carrying concealed weapons. Although Reed had been searched, it was prudent and reasonable for the officer to make certain that defendant was also unarmed. A police officer need not wait until he is attacked to make a precautionary search (*In re Michael S.* (1983) 141 Cal.App.3d 814, 817 [190 Cal.Rptr. 585]), and it was entirely reasonable for Officer Smith to assure himself that he was not handing defendant a weapon.

## C.

Finally, defendant cites several cases in which a search pursuant to consent was invalidated upon a finding that the officer obtained the consent by concealing or misrepresenting his intent. (E.g., *People* v. *Superior Court (Kenner)* (1977) 73 Cal.App.3d 65 [139 Cal.Rptr. 343].) There is no evidentiary support for the claim that Officer Smith had any purpose in knocking on the door of the motel room other than to obtain the clothing of the minor girl; the consent to his entry given by Tina Veach was valid.

Defendant's reliance on *Eiseman* v. *Superior Court* (1972) 21 Cal.App.3d 342 [98 Cal.Rptr. 342] is similarly misplaced. In that case, the police seized as contraband several vials which were found in a clutter of small bottles and other vials on a dresser. Nothing about the vials was particularly suspicious, and the officers did not determine that they might contain contraband until they were picked up and examined. Here, Officer Smith saw the hypodermic syringe as soon as the door was opened. Its possession was very possibly illegal under Health and Safety Code section 11364 or Business and Professions Code sections 4151-4152. It cannot be successfully argued that the officer did not have every right to be where he was in seeking to obtain the minor's clothing (*Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 310-311 [102 Cal.Rptr. 161, 497 P.2d 505]), and his discovery of the syringe could hardly have been more inadvertent within the meaning of *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 465-466 [29 L.Ed.2d 564, 582-583, 91 S.Ct. 2022].

As we have discussed above, the view of the syringe justified the subsequent investigation and detention. The only error was that of Tina Veach in opening the door.

The judgment is affirmed.