Filed 1/30/14  P. v. Hanks CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MAURICE LAPRELE HANKS, JR.,<br><br>        Defendant and Appellant. | A135496<br><br>(Contra Costa County<br>Super. Ct. No. 51117506) |

Maurice Hanks, Jr., appeals from convictions of illegal possession of a firearm and ammunition.  He contends the trial court erred in denying his motion to suppress evidence seized in what he claims was an unlawful detention and search of his person. We affirm.

**STATEMENT OF THE CASE**

Appellant was charged by information filed on November 9, 2011, with one count of possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1) [now § 29800, subd. (a)(1)])[1] and one count of possession of ammunition by a convicted person (former § 12316, subd. (b)(1) [now § 30305, subd. (a)(1)]).  It was alleged that appellant had been convicted of burglary, a felony, on August 31, 2011.  It was further alleged that the prior burglary constituted a strike under subdivisions (b) through (i) of

---

[1] All statutory references are to the Penal Code.

1

sections 667 and 1170.12, and rendered appellant eligible to be sentenced to state prison. (§ 1170, subds. (f) & (h)(3)(A).)

At the preliminary hearing on November 2, 2011, appellant moved to suppress evidence of the firearm and ammunition seized as a result of what he argued was an illegal detention and search. This motion was denied.

In the trial court, appellant again moved to suppress evidence, as well as to dismiss the information (§ 995). These motions were denied after the court heard argument on February 2, 2012.

Jury trial began on February 15 and on February 17, the jury found appellant guilty of both counts. Appellant had previously stipulated that he had suffered a prior felony conviction. The court found the strike and prison eligibility allegations true.

On May 7, the court denied appellant's motion to strike the prior and sentenced appellant to the middle term of two years on each count, doubled because of the prior strike conviction, to run concurrently for a total prison sentence of four years.

Appellant filed a timely notice of appeal on May 16, 2012.

## STATEMENT OF FACTS[2]

In October 2011, Richmond Police Officers Benjamin Therriault was working as a crime-free housing officer at the Pullman Point apartment complex, a complex consisting of four separate two-story buildings with about 200 units in a high-crime area. The crime-free housing program had police officers work with the management of low-

---

[2] The statement of facts is based primarily on the evidence presented at trial. The factual basis for the pretrial motion to suppress, however, was limited to the transcript of the preliminary hearing. A few of the facts relevant to the suppression motion were brought out at the preliminary hearing but not at trial; for these, we will refer to the transcript of the preliminary hearing.

Respondent points out that the argument in appellant's opening brief on appeal improperly relies in part on trial testimony that was not part of the record upon which the motion to suppress was considered. For the most part, the citations respondent provides point to trial testimony that does not differ in substance from the testimony at the preliminary hearing. To the extent appellant asks us to consider points not established by the evidence at the preliminary hearing, we decline the request.

income housing areas to alleviate criminal problems, through actions such as foot patrols, advising management on ways to enhance the standard of living for the tenants, and targeting gang members and living in or visiting the complex. Therriault and other Richmond police officers had investigated a number of violent crimes at the complex, including shootings, and had encountered firearms on individuals and in apartments there on many occasions.

Trespassing was a specific problem at Pullman Point. On the evening of October 6, Therriault and Officer Matthew Stonebraker were assigned to observe a back gate to the complex that was frequently scaled by trespassers. This vehicle gate, in a fence about eight feet high, was kept open during school hours and secured the rest of the time. Previously, a pedestrian gate next to the vehicle gate had been kept open 24 hours a day, but it had been locked not long before the present incident, preventing access to that side of the complex. Many residents of the complex would jump over the fence to get in or out instead of walking the long way around through the front gate. There was a "no trespassing" sign affixed to the locked gate, as well as other such signs in the area facing the gate.

At about 9:30 p.m., the officers observed two Black males scale the gate, one of whom Therriault identified in court as appellant. Therriault testified that after the two continued a little further into the property, he and his partner decided to detain them on suspicion of trespassing. Therriault walked in appellant's direction and told him to stop. Therriault did not recall whether he identified himself as a police officer, but he and his partner were in full uniform. Appellant did not stop initially, and Therriault repeated his command several times. Appellant, who was holding a cell phone in his right hand, put the phone down against the side of his body and turned toward Therriault. Due to his knowledge of the area, the time of day, appellant's baggie clothing and the fact he could not see appellant's hand, Therriault believed appellant could be armed. He withdrew his service revolver and held it at the "low ready," at a down angle in front of his body, for "[m]aybe a second," then reholstered it when he saw appellant's hand. Therriault heard appellant's companion, who had been detained by Officer Stonebraker, say something

3

about a knife.  This caused Therriault concern because "usually when there's one weapon there are more."

Therriault directed appellant to place his hands on top of his head and interlock his fingers.  Appellant did not completely interlock his fingers to the officer's satisfaction; Therriault tried to hold them together and appellant began to pull them apart to separate his hands.  Therriault tightened his grip on appellant's hands but because of appellant's resistance and concern for his safety, he put appellant's hands in handcuffs behind his back.  He then conducted a pat search of appellant's waistband.  In front of appellant's right hip, Therriault felt a solid object he could not immediately identify.  As he tried to feel it again, appellant shifted his body and Therriault did not feel the object anymore.  Therriault pulled appellant closer to him, heard a sound "[c]lanking, metallic sound" from the area of appellant's leg, looked down and saw the barrel of a black firearm protruding from appellant's right pants leg.  Therriault lifted appellant's pant leg and saw the rest of the firearm, then placed appellant on the ground in a prone position and conducted a more extensive pat-down search for weapons.

Officer Stonebraker retrieved the firearm and checked to see whether it was loaded.  As Stonebraker was checking the weapon, appellant said something to the effect of, "Dam[n], and it's loaded, too."  Appellant was placed under arrest.  The weapon, a .380 caliber automatic pistol, was found to contain one live .380 caliber bullet in the chamber and 10 .380 caliber bullets in the magazine.

Therriault testified that not long before the present incident, he had had contact with appellant and determined that appellant did not live at the complex but was there to visit a girl.

**DISCUSSION**

Appellant contends the trial court should have granted his motion to suppress because Officer Therriault did not have reasonable suspicion to detain or to pat search him.  In essence, appellant argues that the various factors the officer cited did not provide a reasonable basis for suspicion of criminal activity, it would have been more reasonable

4

for the officer to conclude appellant was at the complex to visit the friend he had previously visited there, and there was no justification for the pat search.

" 'In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review.' (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133–1134.) On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [if the trial court's ruling is correct ' " ' upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion' " ']; *People v. Braeseke* (1979) 25 Cal.3d 691, 700–701.)" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.)

Even in the absence of probable cause to arrest, "[a] detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; *People v. Celis* (2004) 33 Cal.4th 667, 674.) That the events may also be consistent with innocent is irrelevant: "[W]hen circumstances are ' "consistent with criminal activity," they permit—even demand—an investigation . . . .' (*In re Tony C*. [(1978)] 21 Cal.3d [888,] 894.) A different result is not warranted merely because circumstances known to an officer may also be ' "consistent with lawful activity." ' (*Ibid*.) As we said: 'The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . .' (*Ibid*.)" (*People v. Souza, supra*, 9 Cal.4th at p. 233.)

Further, police officers have a "narrowly drawn authority" to conduct "a

5

reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.  The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.  [Citations.]  And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.  [Citations.]"  (*Terry v. Ohio* (1968) 392 U.S. 1, 27, fn. omitted.)

Although appellant now challenges both the detention and the pat search, in the trial court he expressly conceded the validity of the detention and challenged only the search.  His argument at the preliminary hearing was that the officer improperly went "directly into a pat-search" rather than asking questions to investigate whether appellant was trespassing.  At the trial court hearing on the motion to suppress, the parties' arguments and the court's decision were also directed to the propriety of the search, not the detention.

The detention was clearly lawful.  The fact that appellant scaled a locked gate clearly labeled with "no trespassing" signs, in a location where the officers had been assigned specifically because of a trespassing problem, made it more than reasonable for Officer Therriault to investigate the potential trespass violation.  The only question, here as below, is whether the officer's search was reasonable.

As indicated above, Officer Therriault enumerated several factors that caused him to believe appellant might be armed:  His knowledge of the area, the time of day, appellant's baggie clothing, the fact he could not see appellant's hand, and the fact that appellant's companion said something about a knife.  The trial court based its decision that the officer's concern was reasonable primarily on appellant's companion's apparent possession of a knife (citing *People v. Wright* (1988) 206 Cal.App.3d 1107, 1112) and appellant's "delay" in complying with the officer, which it viewed as potentially

6

indicating defiance (citing *People v. Wigginton* (1973) 35 Cal.App.3d 732). The court also viewed the high-crime area as a relevant circumstance, albeit not sufficient to automatically justify a pat search; and noted that the fact it was nighttime and appellant's baggie clothing were relevant but of minor importance in the analysis. Acknowledging it was a close case, the court held that the combination of factors justified that officer's decision to conduct the search.

Appellant urges that these factors, in combination, were insufficient to create an objective reasonable basis for suspicion that appellant was engaged in criminal activity or presented a danger to the police officers.

Appellant correctly points out that presence in a high crime area does not in itself provide a reasonable basis for suspicion of criminal conduct or concern for officers' safety. (*People v. Bower* (1979) 24 Cal.3d 638, 645.) "But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis. [Citations.]" (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124.) Here, it was not appellant's mere presence that prompted Therriault to detain and search him, but his conduct in scaling the locked gate to a complex where he did not reside and subsequent lack of cooperation, combined with his companion's reference to a knife. (See *In re H.M.* (2008) 167 Cal.App.4th 136, 147–148 [stop and frisk not based solely on presence in gang territory but on "curious activities" observed by experienced officer].)

Appellant contends Officer Therriault, the prosecutor and the trial court improperly emphasized the "uncharged, unproven allegation that he was entering the property as a trespasser." His climbing over the gate, he maintains, should not have been seen as a reliable indicator of trespass because the gate was routinely scaled by residents; Therriault's prior contact with appellant established appellant was an invitee of a resident on a prior occasion; Therriault did not know or determine that appellant's companion was not a resident; and climbing over a gate is not an act that would lead a reasonable person

7

to believe the climber is carrying a weapon. Appellant misses the point. That he *might* have been innocently entering the premises did not eliminate the officers' need to determine whether the activity was in fact legal or illegal. (See *People v. Souza, supra,* 9 Cal.4th at p. 233.) After the police initiated the stop—when appellant failed to immediately respond to the command to stop and to comply with the directions to keep his hands interlocked on top of his head—his conduct, combined with the location, time of night, and reference to a knife by his companion, was the basis for the further decision to conduct a pat search.

Appellant contends that his failure to stop immediately in response to the police officers was not a reasonable basis for suspicion because he was on his cell phone and might not have heard the initial command to stop. Again, the possible innocent explanation does not obviate the officers' legitimate reason for detaining a suspected trespasser, and the search (as opposed to the detention) was based on appellant's further conduct resisting the officer and circumstances including the location and his companion's reference to a knife. The same is true of appellant's baggie clothing: While it might have been completely innocent, given the totality of the circumstances, Officer Therriault was reasonable in viewing it as a factor supporting concern about he potential for a concealed weapon.

Appellant contends we must ignore the officer's and court's reliance upon Therriault's testimony that he heard appellant's companion say something about a knife because there was no proof that the conversation Therriault thought he heard in fact occurred or that the companion actually had a knife. Appellant notes that Officer Stonebraker did not testify that he seized a knife from the companion or corroborate Therriault's description of the conversation.

That Stonebraker—who was not called as a witness at the preliminary hearing— did not corroborate Therriault's testimony on this point did not undermine the testimony. It was for the court (in this case, at the preliminary hearing, as no additional testimony

8

was presented at the hearing on the subsequent motion to suppress (§ 1538.5, subd. (i))[3] to determine the credibility of Therriault's description of what he heard and how he interpreted it.

Appellant also challenges the trial court's reliance on *People v. Wright, supra,* 206 Cal.App.3d at p. 1112, for the proposition that it was reasonable for Officer Therriault to consider appellant's companion being armed as a factor bearing on his need to conduct a pat search for weapons. Appellant contends the facts of *Wright* have no relevance to the present case: There, the defendant found in a motel room with several other people, including a man familiar to the police officer for having a history of carrying concealed weapons. (*Ibid.*) Here, appellant maintains, there was no evidence that either of the police officers knew appellant or his companion to have a history of carrying concealed weapons. Again, appellant misses the point. *Wright* viewed the officer's knowledge that the defendant's companion had a history of carrying concealed weapons as providing a reasonable basis for suspicion that the defendant *might* be armed. In the present case, the reasonable basis for suspicion was the comment Therriault overhead which led him to believe appellant's companion was *presently* armed. The point is simply that an officer may reasonably be concerned that a subject is armed when that subject's companion is, or there is objective reason to believe might be, armed.

In sum, considering the totality of the circumstances we have discussed, Officer Therriault's decisions to detain appellant and then to conduct a pat search were reasonable. There was no error in denial of the motion to suppress.[4]

---

[3] Under section 1538.5, subdivision (i), at a renewed hearing on a motion to suppress in the trial court, "[t]he court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the court as to evidence or property not affected by evidence presented at the special hearing."

[4] Given this conclusion, there is no need for us to consider the trial court's alternate finding that the search could be upheld under the doctrine of inevitable discovery, because appellant's entry onto the property without license of the owner would have justified an arrest for trespass under section 602, subdivision (h)(1), and,

## DISPOSITION

The judgment is affirmed.

_____
Kline, P.J.

We concur:

_____
Haerle, J.

_____
Richman, J.

---

therefore, a search incident to arrest. This theory had been raised by the prosecution in opposition to the motion to suppress. At the hearing, the defense noted that section 602, subdivision (o), requires a warning by the peace officer or person in lawful possession of the property; the prosecutor pointed to other subdivisions of the trespass statute that could have been the basis for arrest.